# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

# NEWARK DIVISION

| | |
|---|---|
| NICHOLAS BIASE, ROSA GRUE, JOHN DUDASIK, TODD BASLER, and GAIL MAHONEY, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC and DAIMLER AG,<br><br>      Defendants. | **COMPLAINT - CLASS ACTION FOR:**<br><br>(1)  Breach of Express or Written Warranty<br>(2)  Breach of Express or Written Warranty – Magnuson-Moss Warranty Act<br>(3)  Breach of Implied Warranty of Merchantability<br>(4)  Breach of Implied Warranty – Magnuson-Moss Warranty Act<br>(5)  Violations of New Jersey's Consumer Fraud Act<br>(6)  Violation of New York General Business Law<br>(7)  Violation of New York General Business Law<br>(8)  Violation of the Illinois Consumer Fraud & Deceptive Business Practices Act<br>(9)  Violation of Illinois Uniform Deceptive Trade Practices Act<br>(10) Violation of the Missouri Merchandising Practices Act<br>(11) Violation of the Florida Deceptive & Unfair Trade Practices Act<br>(12) Fraudulent Concealment<br>(13) Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     Plaintiffs Nicholas Biase, Rosa Grue, John Dudasik, Todd Basler, and Gail Mahoney bring this action for themselves and on behalf of all persons who purchased or leased certain vehicles equipped with uniform and uniformly defective HVAC Systems designed,

manufactured, distributed, warranted, marketed, and sold or leased by Mercedes-Benz USA, LLC ("MBUSA") and Daimler AG ("Daimler") (collectively, "Mercedes"), as described below.[1]

2.     The vehicles at issue in this action include the 2001-2018 Mercedes C-Class, 2000-2014 Mercedes CL-Class, 2013-2018 Mercedes CLA-Class, 2003-2009 Mercedes CLK-Class, 2004-2018 Mercedes CLS-Class, 2003-2018 Mercedes E-Class, 2007-2016 Mercedes GL-Class, 2017-2018 Mercedes GLS-Class, 2010-2015 Mercedes GLK-Class, 2016-2018 Mercedes GLC-Class, 2006-2016 Mercedes M-Class, 2017-2018 Mercedes GLE-Class, 2015-2018 GLA-Class, 2006-2015 Mercedes R-Class, 1999-2018 Mercedes S-Class, 2003-2012 Mercedes SL-Class, 2004-2016 Mercedes SLK-Class, and 2002-2013 Maybach 57 and 62 (the "Class Vehicles").

3.     This action is brought to remedy violations of law in connection with Mercedes's design, manufacture, marketing, advertising, selling/leasing, warranting, and servicing of the Class Vehicles. These Class Vehicles' heating, ventilating, and air conditioning systems ("HVAC Systems") have a serious design defect that causes the HVAC Systems to (a) accumulate mold and mildew residue or growth within the HVAC System; (b) emit a moldy or mildewy odor that permeates the Vehicle cabin when the HVAC system is activated; and (c) cause the Vehicle's passenger cabin to be unbearable and thus unusable for its intended purpose.

4.     On information and belief, the HVAC System is substantially the same, from a mechanical engineering standpoint, in all Class Vehicles, in that the HVAC Systems in all Class

---

[1] Plaintiffs allege claims against two Defendants, a corporation and its wholly-owned subsidiary, as explained more fully herein.  To the extent one or the other Defendant had a discrete, distinguishable role in causing the injuries alleged herein, such information is exclusively in Defendants' possession.

Vehicles are made up of substantially the same components (evaporator, evaporator housing, ducting, fan, filter, drain lines, etc.), and all employ the same general mechanism to deliver ventilation, heating, and cooling to the passenger cabin.

5.      Because of its faulty design, during normal and expected conditions the HVAC System fails to properly evaporate or drain the condensation that accumulates within the System, creating a moist, hospitable environment for the growth of bacteria, fungus, mold, and spores, which then are blown into the passenger cabin when the HVAC System is in use (the "HVAC System Defect"). The mold-carrying air has a foul, mildewy smell that is highly unpleasant and can cause respiratory problems and aggravate allergies.

6.      The moldy, smelly air emitted by the defective HVAC System is not a one-time event in the Class Vehicles – Class Members report it occurs every time the HVAC System is turned on, and is especially pervasive in humid weather or after it has rained.

7.      When Plaintiffs and Class Members complain to Mercedes about the HVAC System Defect, Mercedes's only "solutions" are replacement of the cabin air filter or "flushing the system,"[2] both of which are temporary and do not address the defective HVAC System design, and thus are not permanent fixes for the Defect. What is worse, Mercedes made Class Members pay out-of-pocket for these temporary "fixes" for the HVAC System Defect even if Class Members' Vehicles remained under warranty at the time.

8.      The HVAC System Defect inhibits Class Members' proper and comfortable use of their Vehicles, and requires Class Members to pay for repeated temporary fixes like replacements of the cabin air filter and/or "flushing" of the HVAC System.

---

[2] "Flushing the system" consists of partially disassembling the dashboard and drilling a hole into the HVAC System and applying a disinfecting solution to the evaporator coil.

9.      On information and belief, prior to the manufacture and sale or lease  of the Vehicles at issue, Mercedes knew of the HVAC System Defect through sources such as pre-release evaluation and testing; arbitration action; repair data; replacement part sales data; early consumer complaints made directly to Mercedes, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Mercedes dealers; and other internal sources. Yet despite this knowledge, Mercedes failed to disclose and actively concealed the HVAC System Defect from Class Members and the public, and continued to market and advertise the Class Vehicles as "sophisticated," "comfortable," and "state-of-the-art" vehicles, which they are not.

10.      Mercedes knew or should have known that the "fixes" it charged Class Members for to "remedy" the HVAC System Defect – such as replacing the cabin air filter or "flushing the system" – are not permanent solutions for the Defect.

11.      Mercedes has failed to provide a permanent in-warranty fix for the Defect and failed to reimburse Class Members for the costs of its temporary "fixes."

12.      As a result of Mercedes's alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, including that the Class Vehicles contain defective HVAC Systems, have manifested, and continue to manifest, the HVAC System Defect, and that Mercedes has not provided a permanent remedy for this Defect. Furthermore, Plaintiffs and Class Members have incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the HVAC System Defect.

## PARTIES

### *Plaintiff Nicholas Biase*

13.      Plaintiff Nicholas Biase resides in Florham Park, New Jersey.

14.     Mr. Biase leased a 2017 Mercedes GLE350, on June 30, 2017, from Ray Catena Mercedes-Benz of Edison in Edison, New Jersey.

15.     Mr. Biase's Class Vehicle was manufactured, leased, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. 4JGDA5HB6HA976562.

16.     Mr. Biase leased the Class Vehicle for his personal, family, and household use.

17.     Mr. Biase expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know, or expect, that mold would develop in his vehicle's HVAC System, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold. Had he known these facts, he would not have leased his Class Vehicle or would have paid less for it.

18.     Mr. Biase first experienced a noxious odor caused by the HVAC System approximately six months after it was leased.

19.     Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists and is worse in the summer.

20.     The strength of the odor intensifies after usage of the air conditioner.

21.     Mr. Biase brought his concerns regarding a strong moldy smell in his vehicle to his independent mechanic in, or around late July, 2018, and was told that the problem was mold in his HVAC system.

22.     Mr. Biase brought his concerns regarding a strong moldy/ammonia smell in his vehicle to Ray Catena Mercedes-Benz of Union, on or about July 27, 2018, at which time the

dealer confirmed the presence of smell and performed a flush of the HVAC system. The smell returned almost immediately.

23.     Mr. Biase again brought his concerns regarding a strong moldy smell in his vehicle to Ray Catena Mercedes-Benz of Union, on or about August 20, 2018, at which time the dealer performed another flush of the HVAC system. Despite this, the smell has remained.

24.     During all relevant times, Mr. Biase's vehicle has been under warranty.

25.     Mr. Biase regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he leased his Mercedes GLE in 2017. Although he does not recall the specifics of the many Mercedes advertisements he saw before he leased his class vehicle, he does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to lease his vehicle. Had those advertisements or any other Mercedes materials disclosed to Mr. Biase that the Class Vehicles had defective HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC System and/or air filtration system, he would not have leased his Class Vehicle, or would have paid less for it.

*Plaintiff Rosa Grue*

26.     Plaintiff Rosa Grue resides in Dix Hills, New York.

27.     Ms. Grue owns a 2016 Mercedes GLE350, which she purchased new on May 21, 2016, from Mercedes-Benz of Huntington in Huntington, New York, along with a Mercedes Pre-Paid Service Plan.

28.     Ms. Grue's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. 4JGDA5HB5GA776965.

29.     Ms. Grue purchased the Class Vehicle for her personal, family, and household use.

30.     Ms. Grue expected her Class Vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that mold would develop in her vehicle's HVAC System, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold. Had she known these facts, she would not have bought her Class Vehicle or would have paid less for it.

31.     Ms. Grue first experienced a noxious odor caused by the HVAC System a year after its purchase.

32.     Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists and is worse in the summer.

33.     The strength of the odor intensifies after usage of the air conditioner.

34.     Ms. Grue brought her concerns regarding a strong moldy smell in her vehicle to Mercedes-Benz of Huntington, on or about June 2017, and was told that the problem was resolved by flushing her HVAC system. Despite this, the smell remained the same.

35.     During all relevant times, Ms. Grue's vehicle has been under warranty.

36.     For further peace-of-mind with her new purchase, Ms. Grue purchased an additional Mercedes Pre-Paid Service Plan with her vehicle. She expected peace of mind and

protection against surprise billings or expenses. The Plan documents stated "you don't have to worry about any unexpected bills. This frees you from additional workshop costs as unexpected repairs, maintenance or wear parts are already covered, depending on the specific service contract*. You therefore don't have to worry about workshop bills and your Mercedes remains in top condition. With the service contract you will always receive Mercedes-Benz quality – with the service of our qualified workshop specialists and Mercedes-Benz Genuine Parts."

37.     Ms. Grue regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before she purchased her Mercedes GLE350 in 2016. Although she does not recall the specifics of the many Mercedes advertisements she saw before she purchased her class vehicle, she does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements she saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to purchase her vehicle. Had those advertisements or any other Mercedes materials disclosed to Ms. Grue that the Class Vehicles had defective HVAC Systems, or that she would have to pay for repairs/replacement of the HVAC System and/or air filtration system, she would not have purchased her Class Vehicle, or would have paid less for it.

*Plaintiff John Dudasik*

38.     Plaintiff John Dudasik resides in Darien, Illinois.

39.     Mr. Dudasik owns a 2013 Mercedes GL450, which he purchased certified preowned on March 30, 2015, from Mercedes-Benz of Hofman Estates in Illinois.

40.     Mr. Dudasik's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. 4JGDF7CE8DA247620.

41.     Mr. Dudasik purchased the Class Vehicle for his personal, family, and household use.

42.     Mr. Dudasik expected his Class Vehicle to be of good and merchantable quality and not defective.  He had no reason to know, or expect, that mold would develop in his Vehicle's HVAC System, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold.  Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

43.     Mr. Dudasik first experienced a noxious odor caused by the HVAC System within 30 days after purchase of his Vehicle.

44.     Since that time, the noxious odor has continued unabated.  The HVAC System emits the odor when the Vehicle's climate control system is first engaged in cooling mode, and generally persists.  It is worse in the summer.

45.     The strength of the odor intensifies after using the air conditioner.

46.     Mr. Dudasik brought his concerns regarding his Vehicle's strong sour/moldy smell to Mercedes of Westmont in Westmont, Illinois in 2016, and was told that the Vehicle needed a filter change and ultrasonic cleaning. The dealership informed Mr. Dudasik that the service would be done for free on this one occasion, but that it was part of the yearly maintenance program. Despite the service, the smell returned shortly thereafter.

47.     Mr. Dudasik brought the Class Vehicle back to Mercedes of Westmont approximately 10 months later and complained of the smell.  He was told that the repair would be at his expense.

48.     Mr. Dudasik brought the class vehicle back to Mercedes of Westmont in September 2018 and complained of the smell and the dealer replaced the AC and heater housing unit in the vehicle. Despite this, the smell returned shortly thereafter.

49.     During all relevant times, Mr. Dudasik's Vehicle has been under warranty.

50.     Mr. Dudasik purchased Lysol and air filters at a cost of roughly $30.00 total in order to address the smell, but received only temporary relief from these measures.

51.     Mr. Dudasik regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Mercedes GL450 in 2015.  Although he does not recall the specifics of the many Mercedes advertisements he saw before he purchased his Vehicle, he does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw.  Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to purchase his vehicle. Had those advertisements or any other Mercedes materials disclosed to Mr. Dudasik that Class Vehicles had defective HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC System and/or air filtration system, he would not have purchased his Vehicle or would have paid less for it.

*Plaintiff Todd Basler*

52.     Plaintiff Todd Basler resides in Wildwood, Missouri.

53.     Mr. Basler owns a 2008 Mercedes C300, which he purchased preowned on March 14, 2011, from West County Honda in Ellisville, Missouri.

54.     Mr. Basler's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDDGF81X88F144756.

55.    Mr. Basler purchased the Class Vehicle for his personal, family, and household use.

56.    Mr. Basler expected his Class Vehicle to be of good and merchantable quality and not defective.  He had no reason to know, or expect, that mold would develop in his Vehicle's HVAC System, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold in the HVAC System.  Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

57.    Mr. Basler first experienced a noxious odor caused by the HVAC System immediately after he purchased his Vehicle.

58.    Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the Vehicle's climate control system is first engaged and generally persists. The odor is worse in the summer.

59.    The strength of the odor intensifies after usage of the air conditioner.

60.    Mr. Basler brought his concerns regarding a strong sour/moldy smell in his vehicle to Tri Star Mercedes in Ellisville, Missouri in June 2011.  He was told that the Vehicle needed a filter change and ultrasonic cleaning. Despite this, the smell returned after 30 days.

61.    Mr. Basler brought his Vehicle back to Tri Star Mercedes approximately six months later and complained of the smell. He was told that the repair would be at his expense as the Vehicle was now outside of warranty.

62.    During all relevant times, Mr. Basler's vehicle has been under warranty.

63.    When Mr. Basler brought his Vehicle into Tri Star Mercedes, his dealer told him that the smell would return and Mercedes did not have a permanent fix for the defect.  He also

suggested Mr. Basler purchase canned cleaning sprays from AutoZone to regularly address the smell. Mr. Basler purchased said cans twice at a cost of roughly $40.00 total, sprayed the Vehicle with the cleaning substance, and received only temporary relief from the noxious, moldy smell.

64.     Mr. Basler regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Mercedes C300 in 2010.  Although he does not recall the specifics of the many Mercedes advertisements he saw before he purchased his Class Vehicle, he does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw.  Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to purchase his Vehicle. Had those advertisements or any other Mercedes materials disclosed to Mr. Basler that the Class Vehicles had defective HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC System and/or air filtration system of his Vehicle, he would not have purchased his Class Vehicle, or would have paid less for it.

*Plaintiff Gail Mahoney*

65.     Plaintiff Gail Mahoney resides in Cape Coral, Florida.

66.     Ms. Mahoney owns a 2017 Mercedes GLA250, which she purchased new on February 25, 2017, from Mercedes-Benz of Fort Myers in Fort Myers, Florida.

67.     Ms. Mahoney's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDCTG4EB5HJ354106.

68.     Ms. Mahoney purchased the Class Vehicle for her personal, family, and household use.

69.     Ms. Mahoney expected her Class Vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that mold would develop in her vehicle's HVAC System, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold. Had she known these facts, she would not have bought her Class Vehicle or would have paid less for it.

70.     Ms. Mahoney first experienced a noxious odor caused by the HVAC System almost immediately after purchasing it.

71.     Since that time, the noxious odor has continued unabated. The HVAC System emits the odor when the vehicle's climate control system is first engaged and generally persists and is worse in the summer.

72.     The strength of the odor intensifies after usage of the air conditioner.

73.     Ms. Mahoney brought her concerns regarding a strong noxious odor in her vehicle to Mercedes-Benz of Fort Myers, on or about September 2017, and was told that the problem was resolved by flushing her HVAC system. Despite this, the smell went away and then came back the next day.

74.     Ms. Mahoney brought her concerns regarding a strong noxious odor in her vehicle to Mercedes-Benz of Fort Myers, on or about November 2017, and was told that the problem was resolved by flushing her HVAC system. Despite this, the smell went away and then came back the next day.

75.     Ms. Mahoney brought her concerns regarding a strong noxious odor in her vehicle to Mercedes-Benz of Fort Myers, on or about March 2018, and was told that the problem was resolved by flushing her HVAC system. She was charged $32.95 for parts and labor for this flush. Despite this, the smell went away and then came back the next day.

76.     Ms. Mahoney brought her concerns regarding a strong moldy smell in her vehicle to Mercedes-Benz of Fort Myers, on or about May 2018, and was told that the foul odor is normal when her HVAC system is first turned on.

77.     During all relevant times, Ms. Mahoney's vehicle has been under warranty.

78.     Ms. Mahoney regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before she purchased her Mercedes GLA250 in 2017. Although she does not recall the specifics of the many Mercedes advertisements she saw before she purchased her class vehicle, she does recall that safety, reliability, premium quality, comfortable interior, and peace of mind bumper-to-bumper warranty coverage were frequent themes across the advertisements she saw. Those advertisements about quality, peace of mind, and a comfortable interior influenced her decision to purchase her vehicle. Had those advertisements or any other Mercedes materials disclosed to Ms. Mahoney that the Class Vehicles had defective HVAC Systems, or that she would have to pay for repairs/replacement of the HVAC System and/or air filtration system, she would not have purchased her Class Vehicle, or would have paid less for it.

*Defendant Mercedes-Benz USA, LLC*

79.     Defendant Mercedes-Benz USA, LLC ("MBUSA") is a Delaware corporation with its principal place of business in Atlanta, Georgia.

80.     Prior to July 2015, MBUSA's principal place of business was in Montvale, New Jersey.  Upon information and belief, much of the corporate decision-making at issue in this

case concerning the Class Vehicles, including regarding the HVAC Systems in the Class Vehicles and regarding warranties, as well as the misrepresentations and omissions that are the subject of this lawsuit, were directed by, or emanated from, Mercedes representatives working in New Jersey and/or directly reporting to superiors located in New Jersey.  Furthermore, upon information and belief, during much of the relevant time period, Mercedes's product quality division, customer and dealer relations division, national technical specialists, sales division, marketing division, and after-sales service division, among others, were located in, or were supervised by Mercedes personnel located in, New Jersey.

81.     MBUSA is a wholly owned subsidiary of Daimler.

82.     At all times relevant herein, MBUSA has been and has acted as an agent of Daimler and subject to Daimler's control.

83.     At all times relevant herein, MBUSA (itself and through its related entities) engaged in the business of marketing, warranting, distributing, selling, leasing, and servicing automobiles designed and manufactured by Daimler, including the Class Vehicles, in California and throughout the United States.

84.     Mercedes makes all of its consumer sales or leases of Class Vehicles through its authorized dealers; thus for the purposes of the sale (or lease) transaction, Mercedes and the dealer function as an integrated, two-part seller (or lessor).

*Defendant Daimler AG*

85.     Defendant Daimler AG ("Daimler") is a German corporation with its principal place of business in Stuttgart, Germany.

86.     At all times relevant herein, Daimler (itself and through its related entities) engaged in the business of designing and manufacturing the Class Vehicles.

87.     According to MBUSA's counsel, Daimler was solely responsible for designing the Class Vehicles, including their defective HVAC Systems; therefore Daimler is an essential party to this action concerning a design defect in the Class Vehicles' HVAC Systems.

88.     Upon information and belief, Daimler has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the manner of Class Vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the HVAC System Defect.

89.     Daimler has held MBUSA out as its agent for all purposes in the United States, but especially for sales and marketing of Class Vehicles and for ongoing management of relationships with purchasers and lessees of Class Vehicles.  It established MBUSA as its wholly-owned subsidiary company.  It named MBUSA with its official "Mercedes-Benz" title. It provided MBUSA with marketing and technical materials avoiding any distinction between MBUSA and Daimler, and instead representing MBUSA as nothing less than Daimler's presence in the United States for purposes of selling and leasing "Mercedes-Benz" branded vehicles and providing related services.

90.     Based on the foregoing actions, representations, and omissions, Plaintiffs and Class Members justifiably relied on MBUSA's representations regarding the Class Vehicles that were the responsibility of Daimler in, for example, Daimler's design of the Class Vehicles, and were injured because of their purchase or lease of defective Class Vehicles.

## JURISDICTION

### *Subject-matter jurisdiction*

91.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d).

92.     This is a class action brought on behalf of a nationwide class of all purchasers and lessees of the Class Vehicles in the United States; thus some members of the proposed class are citizens of states different from MBUSA's home state.  Moreover, Defendant Daimler is a citizen of a foreign country, and thus has citizenship diverse from Class Members' citizenship.

93.     Upon information and belief, the aggregate claims of individual Class Members exceed $5,000,000 in value, exclusive of interests and costs.

94.     This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this case includes claims arising under federal law.

95.     This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367(a).

*Personal jurisdiction: MBUSA*

96.     This Court has personal jurisdiction over MBUSA because MBUSA is authorized to do business in this District, conducts substantial business in this District, and some of the actions giving rise to this Complaint took place in this District.  The majority of Class Vehicles were distributed by MBUSA while its headquarters were located within this District. Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over MBUSA permissible under traditional notions of fair play and substantial justice.

*Personal jurisdiction: Daimler*

97.     This Court has both general and specific personal jurisdiction over Daimler because Daimler has continuous and systematic general business contacts in this District and had and has contact with this District specifically with respect to the events giving rise to Plaintiffs' and Class Members' claims.

98.     Daimler has purposefully and voluntarily availed itself of this Court's jurisdiction.  *See* Complaint, *Daimler AG v. Onyx Int'l*, No. 3:16-cv-01993-MAS-TJB (D.N.J. Apr. 11, 2016) (Dkt. 1) (observing that since 1926 Daimler has "designed," "manufactured," "produced," and "sold worldwide, including in the United States through its wholly-owned U.S. subsidiaries, its vehicles and related parts under the distinctive Mercedes-Benz brand").

99.     By previously headquartering its wholly owned subsidiary MBUSA in this District, and using MBUSA as its channel for marketing, distributing, warranting, selling and leasing the Daimler-designed Class Vehicles in the District and the United States, Daimler itself has deliberately taken affirmative steps to make Daimler-designed vehicles available to consumers in the District, including Plaintiffs and Class Members; created continuing obligations between Daimler and residents of the District; and purposefully availed itself of the benefits and protections of conducting business in the District through the promotion, marketing, and sale of its products in this District.

100.    Daimler employees and representatives regularly visit Daimler subsidiaries located in this District, hereby continuously conducting business in this District and New Jersey generally.

101.    Further, Daimler's wholly owned subsidiary and agent MBUSA has substantial and consistent contacts in this District, as described above, and as Daimler's agent MBUSA's contacts in this District can be attributed to Daimler.  Upon information and belief, Daimler directs its wholly owned subsidiary and agent MBUSA on matters involving vehicle problems and repairs, and disseminates information, literature, and other materials authored and/or endorsed by it within this District.

102.     Plaintiffs' claims here arise out of Daimler's contacts with this District, particularly in that Plaintiffs could not even have purchased/leased their Class Vehicles if not for Daimler's intentional acts of designing the Class Vehicles (including their defective HVAC Systems) and exporting them for sale to customers in this District, including Plaintiffs and Class Members.

103.     These contacts constitute sufficient bases to render the exercise of jurisdiction over Daimler by this Court permissible under traditional notions of fair play and substantial justice.

## VENUE

104.     Venue is proper in this District under 28 U.S.C. § 1391 because Mercedes is deemed to reside in any judicial district in which it is subject to personal jurisdiction. Additionally, Mercedes transacts business within this District and some of the events establishing the claims at issue here arose in this District.

105.     The appropriate vicinage in the District of New Jersey for this action is Newark, based on the residence of one of the Plaintiffs, the convenience of litigants, counsel and witnesses, and the place where the cause of action arose.  Newark is located near Plaintiff Biase's residence and the location where he leased his Mercedes-Benz vehicle.

## APPLICABLE LAW

106.     Plaintiffs seek damages and equitable relief on behalf of themselves and the Class Members (i) under federal law as to the federal-law claims, and (ii) under New Jersey law as to the state-law claims.  Application of New Jersey law is appropriate because Plaintiffs properly bring this Complaint in this district.

107.    New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

108.    MBUSA's decision to reside in New Jersey until 2015 and, at all relevant times, including through the present, to avail itself of the protection of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

109.    New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure the choice of New Jersey state law is not arbitrary or unfair.

110.    New Jersey has a materially greater interest than any other State in enforcing the rights and remedies granted to consumers under the New Jersey laws invoked in this Complaint. These rights and remedies further strong fundamental public policies of the State of New Jersey.

111.    Until 2015, Mercedes's United States headquarters and principal place of business were located in New Jersey.  Mercedes also owns property and conducts substantial business in New Jersey and, therefore, New Jersey has an interest in regulating Mercedes's conduct under its laws.

112.    Upon information and belief, much of Mercedes's relevant business, including the formulation and execution of the unlawful practices alleged herein, occurred in or emanated from New Jersey. For instance, Mercedes's marketing and engineering efforts relating to the Class Vehicles' Navigation System, as well as its warranty decisions, were, for much of the relevant time, undertaken and orchestrated from its headquarters in New Jersey. Thus, New Jersey has the most significant relationship to the claims asserted by Plaintiff and Class members.

113.     As an alternative to the application of New Jersey law to a nationwide class, for those Class Members who reside in states whose laws do not materially conflict with New Jersey law with respect to the claims and facts alleged here, the Court can and should apply New Jersey law to those Class members' claims.

114.     As an alternative to the application of New Jersey law to a nationwide class, for those Class Members who reside in states whose laws do not materially conflict with New Jersey law with respect to the claims and facts alleged here (the "Sister States"), the Court can and should apply each state's law to their respective Class members' claims.

## FACTUAL ALLEGATIONS

115.     Plaintiffs are informed and believe that, because of the HVAC System Defect, the HVAC Systems in the Class Vehicles are predisposed to foster mold growth and produce a moldy odor under normal use conditions that would not cause non-defective HVAC Systems to produce a moldy odor, compromising the comfort and enjoyment of vehicle occupants, including Class Members, and requiring them to pay for repeated temporary "fixes" including replacements of the cabin air filter and "flushing the system" with disinfectant spray or foam.

116.     The diagram below illustrates the components and air flow of the HVAC systems:



| 1 | Dust filter | D | Blended air |
|---|---|---|---|
| 3 | Evaporator | M2/5 | Fresh air/recirculated air flaps actuator motor |
| 4 | Heater core | M2/6 | Left blended air flap actuator |
| A | Fresh air or recirculated air | M2/7 | Right blended air flap actuator |
| A32m1 | Blower motor | M2/15 | Left and right foot well flaps actuator |
| B | Cooled air | M2/16 | Left and right defroster flaps actuator |
| C | Heated air | M2/21 | Fresh air flaps actuator |

117.    As a vehicle's HVAC system cools air, condensation forms on a component called an evaporator (labeled 3 in the diagram above). In a non-defective system, this condensation is evaporated through the activation of a fan and airflow over the evaporator.

118.    On information and belief, condensation that builds on the evaporator and elsewhere within the Class Vehicles' HVAC Systems is never properly and fully evaporated. This residual moisture provides a haven for the growth of mold and mildew as spores enter the System through outside vents.

119.    Based on preliminary investigation and inspection, due to the HVAC System Defect, several mold species, including Aspergillus/Pencillium, Ascospores, and Smut/Periconia/Myxomy, are present in the evaporators of the Class Vehicles. Said molds are known to secrete odorous mycotoxins such as Patulin, creating and contributing to the foul odors experienced by Plaintiffs and Class Members.

120.    Mycotoxins are toxic to humans and animals and known to cause some or all of the following: allergic reactions, infections, cellular damage, DNA damage, interference with RNA synthesis, inflammation, gastroenteritis, and other harmful effects.

121.    Mercedes knew or should have known that having a damp, poorly draining HVAC System component that could promote the growth of mold could result in or at least exacerbate reactions, diseases, symptoms, or complications in occupants of the Class Vehicles, presenting a risk to their health and safety, especially when the mold growth is in the airway to a tightly sealed and enclosed space containing one or more human beings and animals.

122.    Over time, the mold/mildew/fungus growing in the evaporator can spread, resulting in reduced HVAC System efficiency, while also becoming more difficult to remove and requiring evaporator replacement in some instances.

123.    Moreover, the tightly sealed and enclosed Vehicle passenger compartment can cause concentration levels of toxic smells and chemicals to become much higher than they would in larger and less tightly sealed spaces.

124.    Replacing the cabin air filter is not a fix for the Defect because the filter is "upstream" from the evaporator.

125.    "Flushing the system" is not a permanent fix for the Defect because it simply temporarily reduces mold growth but does not eliminate the cause.

**A.      Mercedes Knew of the HVAC System Defect Prior to Sale or Lease of the Class Vehicles.**

126.    On information and belief, Mercedes learned of the HVAC System Defect at least as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through sources such as pre-release evaluation and testing; arbitration actions; repair data; replacement part sales data; early consumer complaints made

directly to Mercedes, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Mercedes dealers; as well as through other internal sources unavailable to Plaintiffs prior to discovery.

**B.      Mercedes's Knowledge of the HVAC System Defect Gained from Pre-Release Design, Manufacture, Engineering, and Testing Data**

127.     During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, Mercedes necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's HVAC Systems, particularly the basic engineering principles behind the construction and function of the Systems and the expected conditions and uses the Systems would encounter in ordinary customer service.

128.     An adequate pre-release analysis of the design, engineering, and manufacture of the HVAC Systems in the Class Vehicles would have revealed to Mercedes that the HVAC Systems were defective and would foster the growth of mold and other biological agents and therefore introduce moldy air into the passenger cabin.

**C.      Mercedes Was Directly Made Aware of the Defect Via a Successful Consumer Arbitration Action Brought Against It.**

129.     Mercedes learned of the HVAC System Defect at least as early as 2008, when a Class Vehicle owner brought – and won – a consumer arbitration action against Mercedes for the Defect.  Plaintiffs were not aware of this arbitration action at the time they purchased their Class Vehicles.

130.     The following is a synopsis of the Florida Consumer Complaint and Arbitration decision rendered against Mercedes in *Fattah v. Mercedes-Benz USA, Inc.*, 2008-0441/MIA (Fla. NMVAB November 14, 2008):

> The Consumer complained of a foul musty odor coming from the air conditioner vents in her 2007 Mercedes C230. The Consumer testified that the severity of the odor had reduced; however, the

odor still existed. The Manufacturer contended that the alleged
defect did not substantially impair the use, value or safety of the
vehicle. While not denying the existence of the odor, the
Manufacturer asserted that outside elements and humid South
Florida temperatures contributed to the odor. The Board rejected
the Manufacturer's argument and found that the odor substantially
impaired the use, value and safety of the vehicle. Accordingly, the
Consumer was awarded a refund.[3]

131.    During the arbitration hearing, Mercedes was represented by its counsel, a

MBUSA representative out of the Montvale, NJ headquarters, a MBUSA Technical Specialist

for the South Florida region, and the Service Manager at the dealership the consumer had

visited complaining about the odor.

132.    Mercedes described the HVAC System Defect during the hearing: "The system

works in such a way that it will – the AC is supposed to get rid of all the humidity from the air,

ok? And in some cases, you know, where you shut the car off, some water will remain in the

evaporator … what happens is it will accumulate there. It will not fully drain." Mercedes went

on to say that the water that accumulates is what ultimately leads to the moldy odor.

133.    Under questioning from the Arbitration Board, Mercedes admitted that as long as

the consumer kept the car, she would have to repeatedly get Mercedes's temporary "fix," which

one Board member called "a band-aid."

134.    During deliberation, the Board found:

The issue with the vehicle is that it's got a musty smell, Mercedes
knows about it, they have a technical service bulletin to address it,
so apparently they've had enough complaints on this where it rose
to the level of having to deal with it.  The way they deal with it is
they use the disinfectant to clean, and if you read the TSB, you've
got to get in there and make sure you clean the whole evaporator as
much as possible …  Mercedes has admitted that, yeah, there is a

---

[3] Office of the Florida Attorney General, *Florida New Motor Vehicle Arbitration Board
Quarterly Case Summary for 4th Quarter (October 2008 - December 2008)*, *available at*
http://myfloridalegal.com/webfiles.nsf/WF/MRAY-7SAJZG/$file/Oct-Dec08.pdf.

problem, that this is the best they know how to fix it. … So nothing that they've done has made the smell completely disappear.

…

You know, that's one way to look at it in terms of how strong the odor is.  Another way to look at it is that the cure doesn't work. And this is going to be with her and the vehicle for as long as she has the vehicle.  That's the way it looks, because she's coming back in and that's why I was questioning him, because I wanted to see if they found the problem and here's the solution to the problem.  There is no real solution.  In other words, they haven't come up with anything to say, I mean, change this and there's not going to be anymore accumulation of water and, in fact, in other models, from what he's saying, they don't have that problem because whatever the engineering is, it prevents it.  And on this model, it's not there.  So, you know, it's sort of like a defect, which they are trying to deal with, and they can't really deal with it in all the cases.

…

there's really not a fix for the vehicle.  And there shouldn't be a smell to the vehicle.  This is a vehicle that, to me, the fact that the smell persists is substantial in itself.  I think that this is a substantial problem that this vehicle has with this smell.  It's not going to go away.  There's nothing you can do that's going to say we're going to eliminate the smell in this car.  It's just not gonna happen.  There's no remedy to get rid of the smell, period. … And I have a problem with that. … it's just a design problem issue.

135.    Mercedes clearly knew or should have known of the HVAC System Defect from at least as early as this arbitration hearing in 2008.

D.    **Mercedes's Knowledge of the HVAC System Defect from Dealer Technical Bulletins**

136.    Mercedes's knowledge of the HVAC System Defect is demonstrated by Dealer Technical Bulletins issued by Mercedes concerning the Defect.

137.    Upon information and belief, Mercedes issued Dealer Technical Bulletins to its dealerships and service centers describing the HVAC System Defect (or the moldy smell

consumers were complaining about) and informing service technicians of the temporary "fixes" Mercedes was offering.

### E.     Mercedes's Knowledge of the HVAC System Defect from Repair Data

138.    Mercedes also knew or should have known about the HVAC System Defect because of the large number of HVAC System repairs and cabin air filter replacements made during the Class Vehicles' warranty periods.

139.    Upon information and belief, Mercedes collects, reviews, and analyzes detailed information about repairs made on vehicles still under warranty at its dealerships and service centers, including the type and frequency of such repairs.[4] Complete data on such repairs is exclusively within Mercedes's control and unavailable to Plaintiffs without discovery.

### F.     Mercedes's Knowledge of the HVAC System Defect Gathered from the Large Number of Replacement Cabin Air Filters Ordered from Mercedes

140.    Upon information and belief, Mercedes also knew or should have known about the HVAC System Defect because of the higher-than-expected number of replacement cabin air filters ordered from Mercedes, which should have alerted Mercedes that this was a Defect affecting a wide range of its vehicles.

141.    Upon information and belief, Mercedes service centers use Mercedes replacement parts that they order directly from Mercedes. Therefore Mercedes would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement cabin air filters. The ongoing high sales of replacement cabin air filters was (or should have been) known to Mercedes, and alerted Mercedes that its HVAC Systems

---

[4] For example, in the *Fattah* arbitration hearing, Mercedes-Benz counsel testified that Mercedes received a "motor vehicle defect notification" after at least three repairs for the HVAC System odor.

were defective and causing Class Vehicles' HVAC Systems to emit moldy odors frequently and consistently.

### G. Mercedes's Knowledge of the HVAC System Defect Gained from Class Member Complaints Made Directly to Mercedes.

142.    Mercedes also knew or should have known about the HVAC System Defect because numerous consumer complaints regarding failures of the HVAC System were made directly to Mercedes. The large number of complaints, and the consistency of their descriptions of the HVAC System Defect, the related mold formation, and the foul, noxious odors it caused in the Class Vehicles, should have alerted Mercedes to this serious Defect affecting a wide range of its vehicles.

143.    The full universe of complaints made directly to Mercedes about the HVAC System Defect is information presently in the exclusive custody and control of Mercedes and is not yet available to Plaintiffs prior to discovery. However, on information and belief, many Class Vehicle owners complained directly to Mercedes and Mercedes dealerships about the repeated HVAC System failures their Vehicles experienced. For example, some instances of these direct-to-Mercedes complaints are described in Class Vehicle owners' complaints logged with NHTSA ODI and posted on online vehicle owner forums:[5]

- "I am going to start this by copying the information that I sent to the Nevada DMW and to Mercedes corporate as well as the dealership.  Mercedes  WILL NOT respond to our complaints and neither will the dealership.  Here is a background on this terrible car that is a big waste of money!  We purchased the vehicle on December 3, 2011 … On May 2, 2012, with 4,280 miles on the vehicle, we brought it in because of a terrible moldy, wet smell coming from the air vents.  The air filter was removed, replaced and was put into the blowers.  The AC system was also revitalized.  The smell came back within

---

[5] For these and other customer complaints quoted in this Complaint, quotes are left as written, except that those originally in all-caps have been changed to sentence case. Due to the sheer number of typographical and grammatical errors, [sic] notation has not been used. Any emphasis has been added, unless otherwise noted.

two days.  The dealership did not fix this problem." Forum.edmunds.com
(posted February 2013).

- "My car smells like mildew and moldy. I have taken it to the dealer about 3
  times about this situation. I have respiratory problems and allergies and I can
  hardly use this car, it stinks and bothers my breathing." Complaint in NHTSA
  ODI database, ODI ID No. 10342816, date of incident October 28, 2008.

- "Took my 09 C300 in to MB for a moldy smell. Wife just called and said they
  want $155.00. Car has 24,000 on it. Question shouldn't this be covered under
  warranty?" http://www.benzworld.org/forums/ (posted on March 2011).

- "I have a 2006 E350 that has developed a noticeable musty/mold smell
  emitting from the a/c system. Car is under warranty, dealership is just
  changing parts in hopes of stumbling across the problem. To date they have
  changed the cabin air filter and done the service bulletin on system clean-out,
  replaced the condenser …. Anyway, now I notice a distinct mold smell
  coming from the front, outside area of the car when it's parked in the garage. I
  have been on my knees crawling all around the car and cannot nail the source.
  The dealership service writer is useless as I probably could leave a voicemail
  for the mechanic and probably do better. Car always garaged in Palm Beach
  area. Any clues? Thanks." peachparts.com (posted April 2007).

144.    As the above sampling of complaints shows, Class Members have been vocal in

complaining directly to Mercedes about the HVAC System Defect, and the number and

consistency of their complaints should have alerted Mercedes about the HVAC System Defect.

### H.    Mercedes's Knowledge of the HVAC System Defect from Class Member Complaints Collected by NHTSA's Office of Defect Investigations

145.    In addition to complaints made directly to Mercedes, many Class Vehicle owners

and lessees lodged complaints about the HVAC System Defect with NHTSA's ODI, beginning

as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased

their Class Vehicles.

146.    Federal law requires automakers like Mercedes to be in close contact with

NHTSA regarding potential auto defects, including imposing a legal requirement, backed by

criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA,

including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

147.     Thus automakers should and do monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers ongoing obligation to identify potential defects in their vehicles, including design-related defects, such as failures of HVAC Systems to emit mold- and odor- free air as intended.

148.     From its monitoring of the NHTSA databases, Mercedes knew or should have known of the many complaints about HVAC System Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Mercedes to the HVAC System Defect.

149.     NHTSA's publicly available ODI database only contains complaints made in the past five years; thus complaints made before 2012 are not readily accessible. Mercedes, however, had contemporaneous and on-going access to the NHTSA consumer complaint data and that information cannot be obtained by Plaintiffs without discovery. A sampling of the publicly available complaints lodged with NHTSA ODI, includes those quoted above, as well as the following:

- "Molds and mildew build up in the air condition ducts placing people who are susceptible for infection (people with weak immune system) at risk for fatal infection. The dealer stated that this is a known and common condition for this car because the AC box does not drain the condensed water. This is because the way the car was designed. The dealer recommended turning off the AC for 30 seconds while keeping just the fan on every time before turning off the car to dry up the condensed water on the AC coils, not practical. The dealer has a known service to disinfect the AC system but because of the car design could not guarantee that the condition will not return. There is no warning or any instructions in the manual regarding this potentially fatal condition for susceptible people." Complaint in NHTSA ODI database, ODI ID No. 1065573, date of incident July 12, 2014.

- "My car smells like mildew and moldy. I have taken it to the dealer about 3 times about this situation. I have respiratory problems and allergies and I can hardly use this car, it stinks and bothers my breathing" Complaint in NHTSA ODI database, ODI ID No. 10342816, date of incident October 28, 2008.

150.    As the above sampling of complaints makes clear, Class Members have been vocal in complaining to NHTSA ODI about the HVAC System Defect since at least 2008, and Mercedes was, or should have been, aware of and monitoring those complaints, and thus should have known about the HVAC System Defect since at least 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles.

**I.      Mercedes's Knowledge of the HVAC System Defect Gleaned from Class Member Complaints on Public Online Forums.**

151.    In addition to complaints made directly to Mercedes and collected by NHTSA ODI, many Class Vehicle owners and lessees posted complaints about the HVAC System Defect on public online vehicle owner forums. The following is a small sampling of such complaints:

- "Definitely a strong odor coming from the HVAC system that makes it a little embarrassing to have others ride along in your "luxury" automobile. Any advice on how to completely correct this would be appreciated." www.repairpal.com.

- "Crayon type smell in the HVAC system that is so pungent that the wife can't even stand to be in the car." www.repairpal.com

- "I have noticed a very bad or mushy smell when I start my car with A/C off( after I have shut the car for sometime and the AC was running when i shut the car). This gets better in 10-15 seconds after I turn the AC on. The smell is a very strong smell of moisture with stagnant air.... Does anyone have the same experience? I am worried as it might be a problem with my cabin air filter. My car is only 3000miles on it. Thanks" http://mbworld.org/forums/ (posted on March 2012).

- "Whenever I turn the air on, the first 30 seconds it smells really bad, I have to open the windows till it clears out. I checked all the filters already. Any idea how can i make it smell nice/normal?? thnx alot,Lina." Answers.yahoo.com (posted 2007).

- "My wife complained that our 2014 S550 also had musty dirty socks smell 7 months after purchase. I confirmed the smell and my wife's multiple friends confirmed the "sour stinking socks smell". I took the car (S550) to the FJ Newport but they say unable to confirm the smell and told us to pick up the car. They also say that they don't have any known problem with 2014 S550 and further say that the advisor is told to not take the car in the shop unless they can verify the smell. I guess all dealer techs are very insensitive to smells. So we had to pick up the car and bring the car back home. We stopped driving the S550 for a while (weeks) until we are sure of mold free. Because both my wife and I have a certain genetic marker and also have compromised auto immune system and we cannot deal with any mold issue if there exists." Mbworld.org (posted December 2014).

- "My problem concerns a 2001 C320 with 60,000 miles. The climate control emits an extremely musty sour smell from the air vents when the vehicle is first started with the AC on. I presume the air ducts are clear of anything that might smell as the smell is absent when in the heat mode. I have wondered if the problem might be related to the AC charging system, receiver/drier, or a condensation drain tube etc. I know little or nothing about my MB AC. Any thoughts or advice are appreciated before I start dismantling & throw parts at it." www.mbca.org (posted October 2004)

- "Visitor, 2006 Mercedes-Benz C230, 45,000 mi. Smelly mildew hvac." Posted on repairpal.com/mildew-in-heater-box-403

- "The heating, ventilation and AC (HVAC) heater box is susceptible to mildew buildup. This can result in a musty odor from the HVAC system, most noticeable when the system is first turned on." Forum repairpal.com/mildew-in-heater-box-403.

- "We just dropped our 2015 ML 350 off at the dealership due to an extreme vinegar emis[s]ion from the AC. The tech said it will be $330 to clean/flush and replace the filter as this issue is NOT covered under the bumper to bumper war[r]anty. It's a very common problem, apparently, as he gave us his very 'rehearsed' answer as to why this happens. (The condensation has nowhere to escape and becomes moldy). He suggested we park it on a slope and that we should turn off the AC 5 mins before we arrive at our destination ! I don't think that we should have to babysit the AC in a luxury car! He also said that ALL luxury cars have this issue. Well, we've owned Audi's, BMW's and Lexus products all with NO AC issues. So I'm calling BS on Mercedes and I believe that they have known about this issue for years and should be including this service cost in the warranty. Plus, from what I've read this will happen often, it's not a 1 time fix." Benzworld.org (posted February 2016)

152.   As shown by this small sampling of complaints from vehicle owner forums consumers have been vocal in complaining about the HVAC System Defect and the moldy

smell it causes. A multi-billion dollar automaker like Mercedes undoubtedly had and has a marketing department that tracks such sites and should reasonably have been aware of the HVAC System Defect in the Class Vehicles.

153.    In sum, as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, Mercedes was aware of the HVAC System Defect, should have been aware of the HVAC System Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the HVAC System Defect, based on, among others, the following sources:

a.    Pre-release design, manufacturing, engineering, and testing data;

b.    Arbitration actions against Mercedes related to the Defect;

c.    Detailed data gathered by Mercedes about large number of HVAC System Defect repairs;

d.    Knowledge Mercedes had of the large number of replacement HVAC System parts ordered from Mercedes;

e.    Numerous and consistent complaints made directly to Mercedes about the HVAC System Defect;

f.    Numerous and consistent complaints collected by NHTSA ODI about the HVAC System Defect;

g.    Numerous and consistent complaints made on online vehicle owner forums;

h.    Service bulletins sent by Mercedes to its dealerships evincing knowledge of ongoing issues with HVAC Systems in the Class Vehicles; and

i.       Mercedes service center employees' familiarity with and knowledge of the HVAC System Defect.

154.    Moreover, the large number and consistency of Class Member complaints describing the HVAC System Defect's propensity to cause a moldy odor underscores the fact that Class Members considered the HVAC System Defect to be a material issue to the reasonable consumer.

**J.       Applicable Warranties**

155.    Mercedes sold and leased the Class Vehicles with a written express warranty covering the Vehicles for 48 months or 50,000 miles.

156.    Mercedes expressly warranted in writing with respect to the Class Vehicles that it would "repair under warranty, without charge to you, *anything* that goes wrong with your vehicle during the warranty period which is *our fault*" (emphasis added). In its written warranty, Mercedes distinguishes "defects" – for which Mercedes accepts responsibility – from "damage": "Defects are covered [by the warranty] since we, the distributor[,] are responsible. Conversely, we have no control over damage cause by such things as … collision, misuse, and … improper maintenance."

157.    Mercedes represents that its Certified Pre-Owned ("CPO") vehicles "are backed by one of the most comprehensive certified pre-owned warranties available." The program includes a warranty for 12 months or up to 100,000 total accumulated vehicle miles. Mercedes represents that its CPO vehicles are factory-backed and the extended warranty provides up to five years or 100,000 total vehicle accumulated miles of coverage. Both Mercedes's new vehicle Limited Warranty and Certified Pre-Owned Limited Warranty and Extended Warranty extend coverage to the climate control system, which includes the HVAC System.

158.    Mercedes provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicle is completed; buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

159.    Based on Plaintiffs' experiences and reports from other consumers, Mercedes refuses to cover the nonpermanent "fixes" under warranty, and instead requires Class Members pay out of pocket for these nonpermanent "fixes" for the HVAC System Defect even if Class Members' vehicle remained under warranty at the time.

### K.    Mercedes's Marketing and Concealment

160.    Upon information and belief, Mercedes knowingly designed, manufactured and sold/leased the Class Vehicles with the HVAC System Defect, while willfully concealing the true inferior quality and sub-standard performance of the Class Vehicles.

161.    Mercedes directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

162.    Mercedes's marketing material describes the various Class Vehicles as "state-of-the-art," "luxury," "fine craftsmanship," and "the most advanced vehicles on the road." Mercedes slogan for its vehicles is "the best or nothing."

163.    Mercedes's marketing materials advertised the Vehicles as "enjoyable" to "everyone" and the HVAC System "filters dust and pollen as small as 0.0002" from the air.  It also promoted videos stating its vehicles are "engineering excellence" and "an automotive masterpiece." Furthermore, it stated, "Soothing. Standard dual-zone automatic climate control allows the driver and front passenger to enjoy individualized comfort in any season. The system filters dust and pollen from the cabin, while a sensor monitors the angle and intensity of sunlight for more even control of temperature." This led Plaintiffs and Class Members to form a

reasonable belief and expectation that mold/mildew and foul smells would not emanate from Class Vehicles' HVAC Systems if contained in the air and certainly caused the reasonable consumer not to expect that the vehicle itself would harbor and facilitate the growth of organic materials regularly giving rise to foul odors making the use of Class Vehicles anything but soothing or enjoyable.

164.    Mercedes also touts "a rigorous 27-point service checklist to keep your Mercedes-Benz running effortlessly for the next 10,000," implying that Class Vehicles will require less-frequent maintenance than other vehicles.  This 27-point service checklist includes pre-road test checks of the air cleaner/filter and HVAC System.

165.    Further, Mercedes represents that its Certified Pre-Owned vehicles must "meet stringent criteria and pass a rigorous inspection." This certification process involves a 164-point inspection, which includes a test of "Automatic Climate Control Function, Regulation, Display, Odors." Mercedes promises that CPO vehicle purchasers/lessees "get industry-leading coverage."

166.    According to its consumer brochures, "[t]he Mercedes-Benz Certified Pre-Owned vehicle offers safety, performance and reliability." Vehicles that have been Certified Pre-Owned purportedly have passed a thorough certification inspection. According to its CPO consumer brochure, all Mercedes CPO vehicles undergo a "climate control inspection" during a road test conducted by a Mercedes-Benz technician and "[a]ny noted deficiencies are repaired, replaced or reconditioned" before the vehicle is sold.

167.    In practice, the Class Vehicles are not as comfortable or enjoyable as Mercedes's marketing suggests. Mercedes concealed the fact that its so-called "Luxury" Class Vehicles, which supposedly are "the most advanced vehicles on the road," are instead not even

comfortable or enjoyable under ordinary conditions because the HVAC Systems repeatedly and consistently emit foul moldy odors into the passenger cabin.

168.    Mercedes marketed Class Vehicles and Mercedes Pre-Paid Maintenance Plans with certain service intervals despite that it knew or should have known that Class Vehicles could not and were not capable of lasting the stated service intervals without exhibiting foul odors or smells.

169.    Plaintiffs and Class Members were exposed to Mercedes's long-term, national, multimedia marketing campaign touting the supposed sophistication and comfort of the Class Vehicles, and Class Members justifiably made their decisions to purchase or lease their Class Vehicles based on Mercedes's misleading marketing that concealed the true, defective nature of the Class Vehicles.

170.    Further, Mercedes knowingly misled Class Members about the true, defective nature of the Class Vehicles. As detailed above, upon information and belief, Mercedes has been aware of the HVAC System Defect since at least 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through pre-release evaluation and testing; arbitration actions; the high number of HVAC System repairs and replacement part sales; and the numerous and consistent complaints about the HVAC System Defect made directly to Mercedes, collected by NHTSA, and posted in public online forums.

171.    Despite Mercedes's knowledge of the Defect, Mercedes told Class Members who complained about the HVAC System Defect that Mercedes had never heard of the problem before and that no others had reported similar issues with their Vehicles' HVAC Systems.

172.     In sum, Mercedes has actively concealed the existence and nature of the HVAC System Defect from Class Members since at least 2008 despite its knowledge of the existence and pervasiveness of the HVAC System Defect. Specifically, Mercedes has:

a.     Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the HVAC System Defect;

b.     Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' HVAC Systems were defective and not fit for their intended purposes;

c.     Failed to disclose, and actively concealed, the fact that the Class Vehicles' HVAC Systems were defective, despite that Mercedes learned of the HVAC System Defect as early as 2008, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles;

d.     Failed to disclose, and actively concealed, the existence and pervasiveness of the HVAC System Defect even when directly asked about it by Class Members during communications with Mercedes, Mercedes Customer Care, Mercedes dealerships, and Mercedes service centers;

e.     Actively concealed the HVAC System Defect by forcing Class Members to bear the cost of temporary "fixes" while at the same time performing those "fixes" at no (or lower) cost for those who complained vocally and often, and calling these "goodwill" services; and

f.     Actively concealed the HVAC System Defect by consistently treating the mold and odors with temporary "fixes," so that the HVAC System Defect is not permanently corrected in Class Members' vehicles, even though Class Members were led to believe that the "fixes" had cured the moldy odor problem in their Vehicles; and

173.     By engaging in the conduct described above, Mercedes has concealed, and continues to conceal, the HVAC System Defect from Class Members. If Class Members had knowledge of the information Mercedes concealed, they would not have purchased or leased the Class Vehicles, or would have paid less to do so.

### L.     Fraudulent Concealment Allegations

174.     Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Mercedes responsible for disseminating false and misleading marketing materials regarding the Class Vehicles. Mercedes necessarily is in possession of all of this information. Plaintiffs' claims arise out of Mercedes's fraudulent concealment of the HVAC System Defect and the foul moldy smells it causes, and its representations about the world-class quality, sophistication, state-of-the-art performance and comfort of the Class Vehicles. To the extent that Plaintiffs' claims arise from Mercedes's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. Plaintiffs allege that at all relevant times, including specifically at the time they purchased or leased their Class Vehicles, Mercedes knew, or was reckless in not knowing, of the HVAC System Defect; Mercedes was under a duty to disclose the Defect based upon its exclusive knowledge of it, and its concealment of it; and Mercedes never disclosed the Defect to Plaintiffs or the public at any time or place or in any manner.

175.     Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Mercedes:

a.     ***Who***:  Mercedes actively concealed the HVAC System Defect from Plaintiffs and Class Members while simultaneously touting the safety, comfort, sophistication, and world-class quality of the Class Vehicles, as alleged in paragraphs 160-173, above. Plaintiffs

are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Mercedes responsible for such decisions.

b.    **What**:  Mercedes knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the HVAC System Defect, as alleged above in paragraphs 121, 126-154.  Mercedes was aware of odor issues in 211-model vehicles produced in 2003-2007 and 203-model vehicles produced in 2001-2007.  Mercedes concealed the Defect and made representations about the safety, comfort, sophistication, world-class quality, and other attributes of the Class Vehicles, as specified above in paragraphs 160-173.

c.    **When**:  Mercedes concealed material information regarding the Defect at all times and made representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles, starting no later than 2008, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged above in paragraphs 160-173. Mercedes still has not disclosed the truth about the Defect in the Class Vehicles to anyone outside of Mercedes. Mercedes has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles. And when consumers brought their Vehicles to Mercedes complaining of the foul moldy odors, Mercedes denied any knowledge of or responsibility for the HVAC System Defect, and in many instances, actually blamed the customer for causing the odor/problem.

d.    **Where**:  Mercedes concealed material information regarding the true nature of the Defect in every communication it had with Plaintiffs and Class Members and made representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or

thing, in which Mercedes disclosed the truth about the Defect in the Class Vehicles to anyone outside of Mercedes. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Mercedes's website.

e. **How**:  Mercedes concealed the HVAC System Defect from Plaintiffs and Class Members and made representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles. Mercedes actively concealed the truth about the existence and nature of the Defect from Plaintiffs and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer and Mercedes promised in its marketing materials that Class Vehicles have qualities that they do not have.

f. **Why**:  Mercedes actively concealed material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles. Had Mercedes disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs and Class Members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Vehicles or would have paid less for them.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.   Fraudulent Concealment Tolling

176.   Upon information and belief, Mercedes has known of the HVAC System Defect in the Class Vehicles since at least 2008—indeed, it was aware that the Defect existed in 211-model vehicles produced in 2003-2007 and 203-model vehicles produced in 2001-2007—and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles.

Yet Mercedes has concealed from or failed to notify Plaintiffs, Class Members, and the public

of the full and complete nature of the HVAC System Defect, even when directly asked about it

by Class Members during communications with Mercedes, Mercedes Customer Care, Mercedes

dealerships, and Mercedes service centers. Mercedes continues to conceal the Defect to this day.

177.    Any applicable statute of limitation has been tolled by Mercedes's knowledge,

active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### B.    Estoppel

178.    Mercedes was and is under a continuous duty to disclose to Plaintiffs and Class

Members the true character, quality, and nature of the Class Vehicles. Mercedes actively

concealed – and continues to conceal – the true character, quality, and nature of the Class

Vehicles and knowingly made misrepresentations about the world-class quality, sophistication,

state-of-the-art safety and comfort of the Class Vehicles. Plaintiffs and Class Members

reasonably relied upon Mercedes's knowing misrepresentations and active concealment of these

facts. Based on the foregoing, Mercedes is estopped from relying on any statutes of limitation in

defense of this action.

### C.    Discovery Rule

179.    The causes of action alleged herein did not accrue until Plaintiffs and Class

Members discovered that their Class Vehicles contained the HVAC System Defect.

180.    However, Plaintiffs and Class Members had no realistic ability to discern that the

Class Vehicles were defective until – at the earliest – after the HVAC System Defect caused

their vehicles to develop mold and emit foul, noxious odors. Even then, Plaintiffs and Class

Members had no reason to know the foul moldy odors were caused by a defect in the Class

Vehicles because of Mercedes's active concealment of the HVAC System Defect. Not only did

Mercedes fail to notify Plaintiffs and Class Members about the HVAC System Defect,

Mercedes in fact denied any knowledge of or responsibility for the HVAC System Defect when directly asked about it, and, in many instances, actually blamed the customer for causing the odor/problem. Thus Plaintiffs and Class Members were not reasonably able to discover the HVAC System Defect until after they had purchased or leased their Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that the HVAC System Defect caused their Vehicles to harbor mold and emit foul, noxious odors.

     **D.**     **Prior Class Action**

    181.    Other plaintiffs have filed two class action complaints: one in the Central District of California on May 9, 2016, *Bhatt et al. v. Mercedes-Benz USA, LLC*, No. 2:16-cv-03171-TJH-RAO (C.D. Cal.), and one in the Northern District of Georgia on May 11, 2017, *Amin et al v. Mercedes-Benz USA, LLC*, 1:17-cv-01701-AT. The limitations period applicable to some of Plaintiffs' and Class Members' claims was and is tolled from at least the time that the Central District of California case was filed.

     **E.**     **Notice Letters**

    182.    Plaintiffs have transmitted letters to Mercedes notifying it of the allegations raised in this Complaint.  *See* Ex. 1 (Notice Letters and certified mail receipts).  Additionally, similarly situated individuals have previously sent letters notifying Mercedes of the allegations raised in this Complaint.  Accordingly, any notice or pre-lawsuit demand requirement has been satisfied as to the Plaintiffs and all Class Members, and the running of any statute of limitations period or other time limit applicable to the claims set forth in this Complaint was stopped, and any such period or limit is subject to tolling.

## CLASS ACTION ALLEGATIONS

    183.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other Class Members similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3),

(b)(2), and/or (c)(4). With respect to the proposed New York class, this lawsuit action meets the

requirements of N.Y. C.P.L.R. § 901(a). This action satisfies the numerosity, commonality,

typicality, adequacy, predominance, and superiority requirements of those provisions.

184.    Plaintiffs bring this class action, including all causes of action stated below, on

behalf of themselves and all other similarly situated members of the proposed Class (referred to

herein as "Class Members"), defined as follows:

> All persons in the United States, other than California or
> Georgia,who purchased or leased a Class Vehicle with the HVAC
> System.  A "Class Vehicle" is a vehicle of any of the following
> models/model years:
>
> 2001-2018 Mercedes C-Class,
> 2000-2014 Mercedes CL-Class,
> 2013-2018 Mercedes CLA-Class,
> 2003-2009 Mercedes CLK-Class,
> 2004-2018 Mercedes CLS-Class,
> 2003-2018 Mercedes E-Class,
> 2007-2016 Mercedes GL-Class,
> 2017-2018 Mercedes GLS-Class.
> 2010-2015 Mercedes GLK-Class,
> 2016-2018 Mercedes GLC Class,
> 2006-2016 Mercedes M-Class,
> 2017-2018 Mercedes GLE-Class,
> 2015-2018 Mercedes GLA Class,
> 2006-2015 Mercedes R-Class,
> 1999-2018 Mercedes S-Class,
> 2003-2012 Mercedes SL-Class,
> 2004-2016 Mercedes SLK-Class, or
> 2002-2013 Maybach 57 and 62.

185.    Alternatively, Plaintiffs bring this class action on behalf of themselves and all

other similarly situated members of the proposed alternative class, defined as follows:

> All residents of New Jersey and states other than California and
> Georgia with laws not materially conflicting with New Jersey law,
> who purchased or leased a Class Vehicle with the HVAC System.[6]

---

[6] Plaintiffs would amend this definition to list specific states after the Court determines which
states' laws do not materially conflict with New Jersey law.

A "Class Vehicle" is a vehicle of any of the following models/model years:

2001-2018 Mercedes C-Class,
2000-2014 Mercedes CL-Class,
2013-2018 Mercedes CLA-Class,
2003-2009 Mercedes CLK-Class,
2004-2018 Mercedes CLS-Class,
2003-2018 Mercedes E-Class,
2007-2016 Mercedes GL-Class,
2017-2018 Mercedes GLS-Class.
2010-2015 Mercedes GLK-Class,
2016-2018 Mercedes GLC Class,
2006-2016 Mercedes M-Class,
2017-2018 Mercedes GLE-Class,
2015-2018 Mercedes GLA Class,
2006-2015 Mercedes R-Class,
1999-2018 Mercedes S-Class,
2003-2012 Mercedes SL-Class,
2004-2016 Mercedes SLK-Class, or
2002-2013 Maybach 57 and 62.

186.    Alternatively, Plaintiffs bring this class action on behalf of themselves and all other similarly situated members of the proposed alternative class, defined as follows:

All residents of New Jersey, New York, Illinois, Missouri, and Florida, who purchased or leased a Class Vehicle with the HVAC System.  A "Class Vehicle" is a vehicle of any of the following models/model years:

2001-2018 Mercedes C-Class,
2000-2014 Mercedes CL-Class,
2013-2018 Mercedes CLA-Class,
2003-2009 Mercedes CLK-Class,
2004-2018 Mercedes CLS-Class,
2003-2018 Mercedes E-Class,
2007-2016 Mercedes GL-Class,
2017-2018 Mercedes GLS-Class.
2010-2015 Mercedes GLK-Class,
2016-2018 Mercedes GLC Class,
2006-2016 Mercedes M-Class,
2017-2018 Mercedes GLE-Class,
2015-2018 Mercedes GLA Class,
2006-2015 Mercedes R-Class,
1999-2018 Mercedes S-Class,
2003-2012 Mercedes SL-Class,

2004-2016 Mercedes SLK-Class, or
2002-2013 Maybach 57 and 62.

187.    Excluded from the proposed Class are: (1) Mercedes, any entity or division in which Mercedes has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) claims for personal injuries resulting from the facts alleged herein. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, otherwise divided into subclasses, or modified in any other way.

## B.    Numerosity

188.    Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in Mercedes's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

## C.    Typicality

189.    The claims of Plaintiffs are typical of the claims of Class Members in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, distributed, warranted, sold/leased, and serviced by Mercedes. Plaintiffs, like all Class Members, have been damaged by Mercedes's misconduct in that they purchased/leased a Vehicle they would not have purchased/leased, or would not have purchased/leased at the price paid, and incurred or will incur the cost of repairs relating to and caused by the HVAC System Defect. Furthermore, the factual bases of Mercedes's misconduct are common to all Class

Members and represent a common thread of misconduct resulting in injury to all Class Members.

### D.   **Adequate Representation**

190.    Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective vehicles.

191.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class Members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of Class Members.

### E.   **Predominance of Common Issues**

192.    There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

a.      whether the HVAC System in the Class Vehicles is defective;

b.      whether Mercedes knew or should have known about the HVAC System Defect, and, if yes, how long Mercedes has known of the Defect;

c.      whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle;

d.      whether Mercedes had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members;

e.      whether Mercedes omitted and failed to disclose material facts about the Class Vehicles;

f.      whether Mercedes's concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing or leasing Class Vehicles;

g.      whether Mercedes represented, through its words and conduct, that the Class Vehicles had characteristics, uses, or benefits that they did not actually have;

h.      whether Mercedes represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another;

i.      whether Mercedes advertised the Class Vehicles with the intent not to sell/lease them as advertised;

j.      whether Mercedes's misrepresentations and omissions about the true defective nature of the Class Vehicles were likely to create confusion or misunderstanding;

k.      whether Mercedes's misrepresentations and omissions about the true defective nature of the Class Vehicles were and are deceptive;

l.      whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

m.      whether Daimler is liable for the acts, omissions, and violations described in this Complaint;

n.      whether MBUSA is liable for the acts, omissions, and violations described in this Complaint;

o.      whether Plaintiffs and the other Class Members are entitled to a declaratory judgment stating that the HVAC Systems in Class Vehicles are defective and/or not merchantable;

p.      whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

q.      whether Mercedes should be declared financially responsible for notifying Class Members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the HVAC System Defect in the Class Vehicles; and

r.      whether Mercedes is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace the defective HVAC Systems.

### F.      **Superiority**

193.    Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Mercedes's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

194.    Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims (compared to the cost of litigation), it is likely that only a few Class Members could afford to seek legal redress for Mercedes's misconduct. Absent a class action, Class Members will continue to incur damages, and Mercedes's misconduct will continue without remedy.

195.    Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

### Notice to Attorney General of Action

196.     A copy of this Complaint will be mailed to the Attorney General of the State of

New Jersey, as required by N.J. Stat. Ann. § 56:8-20, upon and at the time of filing of this

Complaint.

**FIRST CAUSE OF ACTION**
**Breach of Express or Written Warranty**
**(this cause of action against MBUSA only)**

197.     Plaintiffs incorporate by reference each allegation set forth in the preceding

paragraphs.

198.     Plaintiffs seek to recover for MBUSA's breach of express warranty under the

laws of the State of New Jersey.

199.     MBUSA expressly warranted the Class Vehicles against defects including the

HVAC System Defect.

200.     MBUSA knew of the HVAC System Defect, and that this Defect poses serious

safety risks to consumers like Plaintiffs and Class Members, when it expressly warranted

against the Defect, wrongfully and fraudulently concealed material facts regarding the Defect,

failed to inform Plaintiffs and Class Members that the Class Vehicles had the Defect, and

induced Plaintiffs and Class Members to purchase or lease the Class Vehicles under false and/or

fraudulent pretenses, continuing to market and sell Class Vehicles with the express written

warranty despite its knowledge.

201.     MBUSA is obligated, under the terms of its express warranties, to make repairs

and/or replacements to permanently correct the HVAC System Defect for Plaintiffs and Class

Members.

202.     MBUSA breached its express warranties by supplying the Class Vehicles to

Plaintiffs and Class Members with the HVAC System Defect, i.e., in a condition that does not

meet the warranty obligations undertaken by Mercedes, and by failing to remedy the Defect and/or repair or replace the defective HVAC Systems.

203.    Plaintiffs gave MBUSA timely and sufficient notice and a reasonable opportunity to cure its failures with respect to its warranties, and MBUSA failed to do so free of charge or at all.  As more fully detailed above, MBUSA was provided with appropriate notice and has been on notice of the Defect and of its breach of express written warranties from various sources.

204.    MBUSA has failed to repair Class Vehicles and failed to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it expressly warranted when it sold the Class Vehicles to Plaintiff and Class Members.

205.    Affording MBUSA a reasonable opportunity to cure its breach of written warranties was, anyhow, unnecessary and futile here. When Plaintiffs and other Class Members provided such notice and sought relief under the warranty, MBUSA refused to do so and charged them for temporary, inadequate "fixes."

206.    The HVAC System Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiff and Class Members.

207.    As a direct and proximate result of MBUSA's breach of express warranties, Plaintiffs and Class Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs and the costs of needed present and future repairs, in an amount to be determined at trial, and are entitled to the relief requested *infra*.

208.    Any attempt by MBUSA in its capacity as a warrantor to limit or disclaim the express warranties in a manner that would exclude coverage of the HVAC System Defect is unconscionable as a matter of law because the relevant purchase/lease transactions were tainted by MBUSA's concealment of material facts. Thus any such effort by MBUSA to disclaim, or otherwise limit, its liability for the HVAC System Defect is null and void.

209.    To the extent any express warranties do not by their terms cover the defects alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiffs and Class Members whole, the warranties fail of their essential purpose and, accordingly, recovery by Plaintiffs and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

## SECOND CAUSE OF ACTION
### Breach of Express or Written Warranty – Magnuson-Moss Warranty Act
### (this cause of action against MBUSA only)

210.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

211.    The Class Vehicles and HVAC Systems are "consumer products" as defined in 15 U.S.C. § 2301(1).

212.    Plaintiffs and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

213.    MBUSA is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

214.    MBUSA provided Plaintiffs and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

215.    The written warranties that MBUSA provided to Plaintiffs and Class Members were identical in all material respects.

216.    MBUSA expressly warranted the Class Vehicles against defects including the HVAC System Defect.

217.    MBUSA knew of the HVAC System Defect, and that this Defect poses serious safety risks to consumers like Plaintiffs and Class Members, when it expressly warranted against the Defect, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Plaintiffs and Class Members that the Class Vehicles had the Defect, and induced Plaintiffs and Class Members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses, continuing to market and sell Class Vehicles with the express written warranty despite its knowledge and with no intention of honoring said warranty with respect to said known defects.

218.    MBUSA is obligated, under the terms of its express warranties, to make repairs and/or replacements to permanently correct the HVAC System Defect for Plaintiffs and Class Members.

219.    MBUSA breached its express warranties by supplying the Class Vehicles to Plaintiffs and Class Members with the HVAC System Defect, i.e., in a condition that does not meet the warranty obligations that MBUSA undertook, and by failing to remedy the Defect and/or repair and/or replace, free of charge, any defective vehicle component, including defects within the climate control system, which contains the defective HVAC System.  MBUSA did all of the foregoing with knowledge of the existence of the HVAC System Defect.

220.    To the extent any express warranties do not by their terms cover the defects alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiffs and Class Members whole, the warranties fail of their essential

purpose and, accordingly, recovery by Plaintiffs and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

221.    Plaintiffs gave MBUSA timely and sufficient notice and a reasonable opportunity to cure its failures with respect to its warranties, and MBUSA failed to do so free of charge or at all.  As more fully detailed above, MBUSA was provided with appropriate notice and has been on notice of the Defect and of its breach of express written warranties from various sources.

222.    Despite repeated demands made by Plaintiffs and Class Members, MBUSA has failed to repair Class Vehicles and failed to provide to Plaintiffs or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it expressly warranted when it sold the Class Vehicles to Plaintiff and Class Members.  At no time has MBUSA offered a permanent or adequate repair or replacement of the HVAC System that would permanently prevent the moldy odor from recurring.

223.    Despite repeated demands by Plaintiffs and Class Members that MBUSA pay the labor costs and incidental expenses associated with permanently repairing or replacing the HVAC System, and those associated with the temporary measures MBUSA has offered instead, MBUSA has refused to do so. MBUSA's refusal to provide an adequate repair or replacement and to pay for its installation violates 15 U.S.C. § 2304(d)(1).

224.    Pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the

consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."

225.    The regulations of the Federal Trade Commission specifically provide as follows with respect to a product that is warranted: "A seller or manufacturer should advertise that a product is warranted or guaranteed only if the seller or manufacturer, as the case may be, ***promptly and fully performs its obligations under the warranty or guarantee***." 16 C.F.R. § 239.5 (emphasis added).

226.    Here, by warranting or guaranteeing a product for which it was unable (or unwilling) to promptly and fully perform its obligations under the Warranty, MBUSA engaged in false, deceptive, and misleading advertising, marketing and representations, in violation of the FTC's regulations and guidance.

227.    Any attempt by MBUSA in its capacity as a warrantor to limit or disclaim the express warranties in a manner that would exclude coverage of the HVAC System Defect is unconscionable as a matter of law because the relevant purchase/lease transactions were tainted by MBUSA's concealment of material facts. Thus any such effort by MBUSA to disclaim, or otherwise limit, its liability for the HVAC System Defect is null and void.

228.    As a direct and proximate result of MBUSA's breach of its express written warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, and are entitled to other remedies including equitable relief, attorneys' fees, and costs pursuant to, inter alia, 15 U.S.C. § 2310.

### THIRD CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (this cause of action against MBUSA only)

229.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

230.    When it sold its Class Vehicles, MBUSA extended an implied warranty to Class Members that the subject vehicles, including the HVAC System, were merchantable and fit for the ordinary purpose for which such goods were sold and did not suffer from defects such as the HVAC System Defect.

231.    Persons who purchased or leased a Class Vehicle are entitled to the benefit of their bargain: a vehicle with a nondefective HVAC System that does not emit moldy air. MBUSA breached the implied warranty of merchantability by failing to provide vehicles free of this fundamental defect and instead providing vehicles (1) not fit for their ordinary purposes and (2) not of a merchantable quality.

232.    MBUSA also breached the implied warranty of merchantability by providing Class Vehicles with HVAC Systems that fail to conform to promises or affirmations of fact set forth in the marketing and sales documentation describing the HVAC System such as those described in paragraphs 160-173 *supra*.

233.    Had the fact that the HVAC System Defect existed been disclosed at the time of sale, Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them.

234.    As a direct and proximate result of MBUSA's breach of the implied warranty of merchantability, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, and are entitled to other remedies including equitable relief, attorneys' fees, and costs.

235.    Plaintiffs have timely provided the required notice to MBUSA regarding the problems they experienced with their Class Vehicle's HVAC Systems, as more fully detailed above, and, notwithstanding such notice, MBUSA has failed and refused to offer Plaintiffs any effective remedy.

236.   Plaintiffs and Class Members have performed all duties required under the terms of the warranties, except as may have been excused or prevented by the conduct of MBUSA, or by operation of law in light of MBUSA's unconscionable conduct.

237.   Any effort by MBUSA to disclaim or otherwise limit its responsibility for the HVAC System Defect was and is unconscionable under all of the circumstances.

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty – Magnuson-Moss Warranty Act
### (this cause of action against MBUSA only)

238.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

239.   Plaintiffs and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

240.   The Class Vehicles and their HVAC Systems are "consumer products" as defined in 15 U.S.C. § 2301(1).

241.   Defendant MBUSA is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5), and is a "merchant" with respect to the sale of HVAC Systems and Class Vehicles.

242.   MBUSA extended an "implied warranty" to Plaintiffs and Class Members by operation of 15 U.S.C. § 2301(7).  This implied warranty accompanied the sale and/or lease of Class Vehicles.  This implied warranty covers defects in Class Vehicles and Class Vehicles' HVAC Systems.  This warranty promised that Class Vehicles and Class Vehicles' HVAC Systems were merchantable and fit for the ordinary purposes for which they were sold.

243.   MBUSA knew or had reason to know that Plaintiffs and Class Members purchased their Class Vehicles with their HVAC Systems in order to obtain functional heating, ventilation, and air conditioning in their Class Vehicles.

244.    MBUSA breached this implied warranty by selling its Class Vehicles with the HVAC System Defect, a fundamental defect that renders the Class Vehicles and the HVAC Systems neither merchantable nor fit for their ordinary purposes, nor conformant to the promises and affirmations uniformly issued by MBUSA in its sales materials and warranty documents, nor of fair or average quality.

245.    Plaintiffs and Class Members have performed all duties required under the terms of the warranties, except as may have been excused or prevented by the conduct of MBUSA or by operation of law in light of MBUSA's unconscionable conduct.

246.    Any attempt by MBUSA in its capacity as a warrantor to limit or disclaim the express warranties in a manner that would exclude coverage of the HVAC System Defect is unconscionable as a matter of law because the relevant purchase/lease transactions were tainted by MBUSA's concealment of material facts. Thus any such effort by MBUSA to disclaim, or otherwise limit, its liability for the HVAC System Defect is null and void and in violation of 15 U.S.C. § 2308.

247.    As more fully detailed above, *see* paragraph 182, Plaintiffs provided written notice to MBUSA of the claims made in this Complaint, including MBUSA's violations of the Magnuson-Moss Warranty Act. Plaintiffs have provided sufficient and timely notice to MBUSA regarding the problems they have experienced with their Class Vehicles' HVAC Systems, and they have given MBUSA a reasonable opportunity to cure its failures with respect to its warranties. Notwithstanding such notice and reasonable opportunity for cure, MBUSA has failed to cure the HVAC System Defect.

248.     Any obligation by Plaintiffs to provide MBUSA with further opportunity to cure the defect is extinguished by operation of law as a result of MBUSA's misconduct as described herein.

249.     As a direct and proximate result of MBUSA's breach of the implied warranty under the Magnuson-Moss Act, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, and are entitled to other remedies including equitable relief, attorneys' fees, and costs pursuant to, inter alia, 15 U.S.C. § 2310.

## FIFTH CAUSE OF ACTION
### Violations of New Jersey's Consumer Fraud Act
### (N.J. Stat. Ann. § 56:8-1, *et seq.*)

250.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

251.     Plaintiffs, Class Members, MBUSA, and Daimler are "persons" within the meaning of the NJCFA.

252.     Plaintiffs and Class Members are "consumers" within the meaning of the NJCFA.

253.     At all relevant times material hereto, Mercedes conducted trade and commerce in New Jersey and elsewhere within the meaning of the NJCFA.

254.     The NJCFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

255.     Mercedes has engaged in unlawful, deceptive practices in the sale of the defective HVAC System in the Class Vehicles as alleged in more detail elsewhere herein, including: (1) selling the HVAC System despite knowing it would fail and/or malfunction and that Mercedes was unable or unwilling to remedy the failure; and (2) failing to disclose and/or concealing this known defect.

256.    Mercedes knew of the HVAC System Defect prior to the sale/lease of the Class Vehicles, and likely as early as 2008, through sources such as those identified in paragraph 126 *supra*.

257.    Mercedes knowingly and intentionally omitted and failed to disclose material facts to Plaintiffs and Class Members with respect to the HVAC System Defect, including the fact that, with normal use, the HVAC System would fail and/or malfunction as described elsewhere herein, for example in paragraphs 160-173 *supra*, and/or denying and/or misleading them as to the true cause and remedy of the noxious foul odor.

258.    Mercedes intended to deceive Plaintiffs and Class Members and intended that Plaintiffs and Class Members rely on Mercedes's misrepresentation, omissions, and acts of concealment, so that Plaintiffs and Class Members would purchase or lease the HVAC System and Class Vehicles at a substantial out-of-pocket cost to them.

259.    Plaintiffs and Class Members, like all objectively reasonable consumers, did not expect the HVAC System in their vehicles to cause the growth of mold and mildew within the HVAC System, or emit moldy and noxious odors through the HVAC System vents.

260.    Mercedes had a duty to disclose the HVAC System Defect to Plaintiffs and Class Members, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the HVAC System Defect, because:

a.      Mercedes was in a superior position to know the true state of facts about the HVAC System Defect in the Class Vehicles;

b.      Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the HVAC System Defect until, at the earliest, the first instance of moldy smell occurring in their Vehicles; and

c.      Mercedes knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the HVAC System Defect prior to its manifestation.

261.    Had Mercedes disclosed all material information regarding the HVAC System to Plaintiffs and Class Members, they would not have purchased or leased the HVAC System and/or their Class Vehicles or would have paid less for them.

262.    Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them.  Mercedes frequently blamed Plaintiffs and Class Members for causing the noxious foul odors complained of.  And Mercedes often charged for repairs which it knew or should have known to be temporary fixes that did not remedy the defect.

263.    Plaintiffs provided any notice that could possibly have been required, as detailed more fully above, *see* paragraph 182, and Mercedes has long been on notice of the Defect and of its violation of the New Jersey Consumer Fraud Act from various sources.

264.    The foregoing acts, omissions, and practices directly, foreseeably, and proximately caused Plaintiffs and Class Members to suffer ascertainable losses in the form of, inter alia, money spent to purchase the HVAC System and/or their Class Vehicles, as well as diminution in the value of their Class Vehicles as a result of having a defective HVAC System, and they are entitled to recover such damages, together with appropriate penalties, including but not limited to treble damages, attorney's fees, and costs of suit.

**SIXTH CAUSE OF ACTION**
**Violation of the New York General Business Law**
**N.Y. Gen. Bus. Law § 349**

265.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

266.     Plaintiffs and Class Members are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

267.     Defendants are "persons," "firms," "corporations," or "associations" within the meaning of N.Y. Gen. Bus. Law § 349.

268.     The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law § 349.  Mercedes' conduct directed toward consumers, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL.

269.     Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

270.     In the course of their business, Mercedes failed to disclose and actively concealed the problems, dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

271.     Mercedes also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective HVAC Systems installed in them.

272.     Mercedes has known of the HVAC Defect since at least 2008.  Prior to installing the Defective HVAC Systems in Class Vehicles, Mercedes knew or should have known of the HVAC Defect, because of complaints made directly and indirectly to them. Mercedes failed to

disclose and actively concealed the problems, dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them.

273.    By failing to disclose and by actively concealing the HVAC Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety and quality, Mercedes engaged in unfair or deceptive business practices in violation of the New York GBL.  Mercedes deliberately withheld the information about the propensity of the Defective HVAC Systems to grow mold, require frequent flushes, and emit noxious odors, in order to ensure that consumers would purchase the Class Vehicles, in order to ensure that consumers would purchase the Class Vehicles.

274.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues, quality issues, and serious defect discussed above. Mercedes compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective HVAC Systems installed in them were safe, reliable, and of high quality, state-of-the-art, and by claiming to be reputable manufacturers that value safety and quality.

275.    Mercedes' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective HVAC Systems installed in them, the quality of Mercedes' brands, and the true value of the Class Vehicles.

276.    Mercedes intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective HVAC Systems installed in them with an intent to mislead Plaintiffs and Class Members.

277.    Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them.  Mercedes frequently blamed Plaintiffs and Class Members for causing the noxious foul odors complained of.  And Mercedes often charged for repairs which it knew or should have known to be temporary fixes that did not remedy the defect.

278.    Mercedes knew or should have known that their conduct violated the New York GBL.

279.    As alleged above, Mercedes made material statements about the safety, quality, and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them that were either false or misleading.  Mercedes' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "sophisticated" and "comfortable", despite their knowledge of the HVAC Defect or their failure to reasonably investigate it.

280.    To protect their profits and to avoid remediation costs and public relations problems, Mercedes concealed the dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them and their consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving defective vehicles.

281.   Mercedes owed Plaintiffs a duty to disclose the true quality, safety and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them because Mercedes:

    a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    b.    Intentionally concealed the foregoing from Plaintiffs; and/or

    c.    Made incomplete representations about the quality, safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

282.   Because Mercedes fraudulently concealed the HVAC Defect in Class Vehicles, resulting in negative publicity once the HVAC Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In addition, the presence of noxious malodor requiring flushes in the Class Vehicles makes them less valuable and attractive to potential purchasers in the used market, thereby further diminishing Class Vehicles' value.  In light of the stigma attached to Class Vehicles by Mercedes' conduct, the odors and frequent flushes needed by Class Vehicles, they are now worth significantly less than they otherwise would be.

283.   Mercedes' failure to disclose and active concealment of the problems and risks posed by the Defective HVAC System in Class Vehicles were material to Plaintiffs and Class Members.  A vehicle made by a reputable manufacturer of quality and safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of poor-quality unsafe vehicles that conceals defects rather than promptly remedies them.

284.   Plaintiffs and Class Members suffered ascertainable loss caused by Mercedes' misrepresentations and their failure to disclose material information.  Had they been aware of the HVAC Defect that existed in the Class Vehicles, and Mercedes' complete disregard for

quality and performance, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of Mercedes' misconduct.

285.    Mercedes' violations present a continuing risk to Plaintiffs as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

286.    As a direct and proximate result of Mercedes' violations of the New York GBL, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

287.    Plaintiffs and Class Members seek punitive damages against Mercedes because Mercedes' conduct was egregious.  Mercedes misrepresented the quality, safety and reliability of millions of Class Vehicles and/or the Defective HVAC Systems installed in them, concealed the HVAC Defect in millions of them, deceived Plaintiffs and Class Members on the defect and remedies, and concealed material facts that only Mercedes knew, all to avoid the expense and public relations problems of correcting the flaw in millions of Class Vehicles.  Mercedes' egregious conduct warrants punitive damages.

288.    Because Mercedes' willful and knowing conduct caused injury to the Plaintiffs and Class Members, Plaintiffs and Class Members seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Mercedes' deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

## SEVENTH CAUSE OF ACTION
## Violation of the New York General Business Law
## N.Y. Gen. Bus. Law § 350

289.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint

290.    Mercedes was and is engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

291.    N.Y. Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce."  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

292.   Mercedes caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Mercedes, to be untrue and misleading to consumers and Class Members.

293.    Mercedes has violated § 350 because the misrepresentations and omissions regarding the HVAC Defect, and Mercedes' failure to disclose and active concealing of the problems, dangers and risks posed by the Class Vehicles, as set forth above, were material and likely to deceive a reasonable consumer.

294.    Class Members have suffered an injury, including the loss of money or property, as a result of Mercedes' false advertising.  In purchasing or leasing Class Vehicles with the Defective HVAC Systems installed in them, Plaintiffs and Class Members relied on the misrepresentations and/or omissions of Mercedes with respect to the quality, safety and reliability of the Class Vehicles.  Mercedes' representations were false and/or misleading because the concealed the HVAC Defect and quality issues seriously undermine the value of the Class Vehicles.  Had Plaintiffs and Class Members known this, they would not have purchased or leased their vehicles and/or paid as much for them.

295.     Pursuant to N.Y. Gen. Bus. Law § 350e, Class Members seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each Class Member. Because Mercedes' conduct was committed willfully and knowingly, Class Members are entitled to recover three times actual damages, up to $10,000, for each Class Member.

296.     Class Members also seek an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under General Business Law § 350.

## EIGHTH CAUSE OF ACTION
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 ILCS 505/1, *et seq.*

297.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

298.     Defendants are "persons" as that term is defined in 815 ILCS 505/1(c).

299.     Plaintiffs and Class Members are "consumers" as that term is defined in 815 ILCS 505/1(e).

300.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

301.     Mercedes participated in misleading, false, or deceptive acts that violated the Illinois CFA.  By failing to disclose and actively concealing the dangers and risks posed by the

Defective HVAC Systems, Mercedes engaged in deceptive business practices prohibited by the Illinois CFA.

302.     In the course of their business, Mercedes failed to disclose and actively concealed the problems, and risks posed by the Defective HVAC Systems installed in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

303.     Mercedes also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective HVAC Systems installed in them.

304.     Mercedes has known of the HVAC Defect since at least 2008.  Prior to installing the Defective HVAC Systems in their vehicles, Mercedes knew or should have known of the HVAC Defect, because of complaints made directly and indirectly to them.  Defendants failed to disclose and actively concealed the problems and risks posed by the Defective HVAC Systems in Class Vehicles

305.     By failing to disclose and by actively concealing the HVAC Defect in the Class Vehicles, by marketing them as sophisticated and comfortable, and by presenting themselves as reputable manufacturers that value safety and quality, Mercedes engaged in unfair or deceptive business practices in violation of the Illinois CFA.  Mercedes deliberately withheld the information about the propensity of the Defective HVAC to grow mold, require frequent flushes, and emit noxious odors, in order to ensure that consumers would purchase the Class Vehicles.

306.     In the course of Mercedes' business, it willfully failed to disclose and actively concealed the problems plaguing HVAC Defect discussed above. Mercedes compounded the deception by repeatedly asserting that the Class Vehicles and/or the Mercedes HVAC Systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety and quality.

307.     Mercedes' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, performance and reliability of Class Vehicles and/or the Defective HVAC Systems installed in them, the quality of Mercedes' brands, and the true value of the Class Vehicles.

308.     Mercedes intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective HVAC Systems installed in them with an intent to mislead Plaintiffs and Class Members.

309.     Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them.  Mercedes frequently blamed Plaintiffs and Class Members for causing the noxious foul odors complained of.  And Mercedes often charged for repairs which it knew or should have known to be temporary fixes that did not remedy the defect.

310.     Mercedes knew or should have known that its conduct violated the Illinois CFA.

311.     As alleged above, Mercedes made material statements about the quality and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them that were

either false or misleading.  Mercedes' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "sophisticated" and "comfortable", despite their knowledge of the HVAC Defect or their failure to reasonably investigate it.

312.   To protect their profits and to avoid repair and warranty costs, Mercedes concealed the dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving defective vehicles.

313.   Mercedes owed Plaintiffs a duty to disclose the true quality and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them because Mercedes:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the quality and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

314.   Because Mercedes fraudulently concealed the HVAC Defect in Class Vehicles, resulting in negative publicity once the HVAC Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In addition, the presence of noxious malodor requiring cleanings/treatments in the Class Vehicles makes them less valuable and attractive to potential purchasers in the used market, thereby further diminishing Class Vehicles' value.  In light of the stigma attached to Class Vehicles by Mercedes' conduct, the odors and frequent

flushes needed by Class Vehicles, they are now worth significantly less than they otherwise would be.

315.    Mercedes' failure to disclose and active concealment of the problems with the Defective HVAC System in Class Vehicles were material to Plaintiffs and Class Members.  A vehicle made by a reputable manufacturer of quality and safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of low-quality and unsafe vehicles that conceals defects rather than promptly remedies them.

316.    Plaintiffs and Class Members suffered ascertainable loss caused by Mercedes' misrepresentations and its failure to disclose material information.  Had they been aware of the HVAC Defect that existed in the Class Vehicles, and Mercedes' complete disregard for quality and performance, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of Mercedes' misconduct.

317.    Mercedes' violations present a continuing risk to Plaintiffs as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

318.    As a direct and proximate result of Mercedes' violations of the Illinois CFA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

319.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs and Class Members seek monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or were grossly negligent.

320.    Plaintiffs also seek an order enjoining Mercedes' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

### NINTH CAUSE OF ACTION
### Violation of the Illinois Uniform Deceptive Trade Practices Act
### 815 ILCS 510/1, *et seq.*

321.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

322.    Illinois's Uniform Deceptive Trade Practices Act ("Illinois UDTPA"), 815 ILCS 510/2, prohibits deceptive trade practices, including among others, "(2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …; (7) represent[ing] that goods or services are of a particular standard, quality, or grade … if they are of another; … (9) advertis[ing] goods or services with intent not to sell them as advertised; … [and] (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

323.    Defendants are "persons" as defined in 815 ILCS 510/1(5).

324.    In the course of Defendants' business, Mercedes failed to disclose and actively concealed the HVAC Defect in the Class Vehicles as described above.  Accordingly, Mercedes engaged in deceptive trade practices as defined in 815 ILCS 510/2, including representing that the Class Vehicles and/or the Defective HVAC Systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and otherwise engaging in conduct likely to deceive.

325.    Mercedes intended for Plaintiffs and Class Members to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged hereinabove.

326.    Mercedes' actions as set forth below and above occurred in the conduct of trade or commerce.

327.    Mercedes' conduct proximately caused injuries to Plaintiffs and Class Members.

328.    Plaintiffs and Class Members were injured as a result of Defendants' conduct in that Plaintiffs and Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

329.    Plaintiffs seek an order enjoining Mercedes' deceptive practices, attorneys' fees, and any other just and proper relief available under the Illinois UDTPA per 815 ILCS 510/3.

### TENTH CAUSE OF ACTION
### Violation of the Missouri Merchandising Practices Act
### Mo. Rev. Stat. §§ 407.010 *et seq.*

330.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

331.    Plaintiffs and Defendants are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

332.    Mercedes engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

333.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material

fact in connection with the sale or advertisement of any merchandise."  Mo. Rev. Stat. § 407.020.

334.     In the course of its business, Mercedes failed to disclose and actively concealed the HVAC Defect in Class Vehicles as described herein.  By failing to disclose the HVAC Defect or facts about the foul odors described herein known to them or that were available to Mercedes upon reasonable inquiry, Mercedes deprived consumers of all material facts about the safety, use, and functionality of their vehicle.  By failing to release material facts about the HVAC Defect, Mercedes curtailed or reduced the ability of consumers to take notice of material facts about their vehicle, and/or it affirmatively operated to hide or keep those facts from consumers. 15 Mo. Code of Serv. Reg. § 60-9.110.  Moreover, Mercedes has otherwise engaged in activities with a tendency or capacity to deceive.  Mercedes also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices, and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective HVAC Systems installed in them.

335.     Mercedes has known of the HVAC Defect in Class Vehicles since at least 2008. Prior to installing the Defective HVAC System in Class Vehicles, Mercedes knew or should have known of the HVAC Defect, because of the various complaints made directly and indirectly to Mercedes as described herein, and Mercedes designed and/or manufactured Class Vehicles.  Mercedes failed to disclose and actively concealed the problems posed by the Class Vehicles and/or the Defective HVAC Systems installed in them.

336.     By failing to disclose and by actively concealing the HVAC Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting itself as

reputable manufacturers that value safety and/or quality, Mercedes engaged in unfair or deceptive business practices in violation of the Missouri MPA. Mercedes deliberately withheld the information about the propensity of the Defective HVAC System to grow mold, require frequent flushes, and emit noxious odors, in order to ensure that consumers would purchase the Class Vehicles.

337.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed the various issues caused by and lack of available fix for the serious defect discussed above. Mercedes compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective HVAC Systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value quality and/or safety. Further, Mercedes failed to disclose and actively concealed that it was aware of the odor issue posed by the Defective HVAC System.

338.    Mercedes' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, comfort, and reliability of Class Vehicles and/or the Defective HVAC Systems installed in them, the quality of Mercedes' brands, and the true value of the Class Vehicles.

339.    Mercedes' intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective HVAC Systems installed in them with an intent to mislead Plaintiffs and Class Members, including without limitation by failing to disclose the HVAC Defect in light of circumstances under which the omitted facts were necessary in order to correct the assumptions, inferences or representations being made by Mercedes about the

safety, quality or reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them. Consequently, the failure to disclose such facts amounts to misleading statements pursuant to 15 Mo. Code of Serv. Reg. §60-9.090.

340.    Because Mercedes knew or believed that its statements regarding safety and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them were not in accord with the facts and/or had no reasonable basis for such statements in light of their knowledge of the HVAC Defect, Mercedes engaged in fraudulent misrepresentations pursuant to 15 Mo. Code of Serv. Reg.60-9.100.

341.    Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them.  Mercedes frequently blamed Plaintiffs and Class Members for causing the noxious foul odors complained of.  And Mercedes often charged for repairs which it knew or should have known to be temporary fixes that did not remedy the defect. Such acts are unfair practices in violation of 15 Mo. Code of Serv. Reg. 60-8.020.

342.    Mercedes knew or should have known that its conduct violated the Missouri MPA.

343.    As alleged above, Mercedes made material statements about the safety, quality, and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them that were either false or misleading.  Mercedes' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe," "the best or nothing," "comfortable," "state-of-the-art," and "sophisticated", despite their knowledge of the HVAC Defect or their failure to reasonably investigate it.

344.    To protect their profits and to avoid warranty and cleanings/treatment costs, remediation costs, and public relations problems, Mercedes concealed the dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving defective vehicles.

345.    Mercedes owed Plaintiffs a duty to disclose the true safety, quality, and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them because Mercedes:

a.      Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.      Intentionally concealed the foregoing from Plaintiffs; and/or

c.      Made incomplete representations about the safety, quality, and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

346.    Because Mercedes fraudulently concealed the HVAC Defect in Class Vehicles, resulting in negative publicity once the HVAC Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In addition, the presence of noxious malodor requiring cleanings/treatments in the Class Vehicles makes them less valuable and attractive to potential purchasers in the used market, thereby further diminishing Class Vehicles' value.  In light of the stigma attached to Class Vehicles by Mercedes' conduct, the odors and frequent flushes needed by Class Vehicles, they are now worth significantly less than they otherwise would be.

347.   Mercedes' failure to disclose and active concealment of the problems and risks posed by the Defective HVAC Systems in Class Vehicles were material to Plaintiffs and Class Members.  A vehicle made by a reputable manufacturer of safe, quality vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe, poor quality vehicles that conceals defects rather than promptly remedies them.

348.   Plaintiffs and Class Members suffered ascertainable loss caused by Mercedes' misrepresentations and their failure to disclose material information.  Had they been aware of the HVAC Defect that existed in the Class Vehicles, and that they would have to pay for frequent flushes, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of Mercedes' misconduct.

349.   Mercedes' violations present a continuing risk to Plaintiffs, to Class Members, as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

350.   As a direct and proximate result of Mercedes' violations of the Missouri MPA, Plaintiffs and the Class Members have suffered injury-in-fact and/or actual damage.

351.   Mercedes is liable to Plaintiffs and Class Members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Mercedes' unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## ELEVENTH CAUSE OF ACTION
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. §§ 501.201, *et seq.*

352.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

353.     Plaintiffs are "consumers" within the meaning of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

354.     Mercedes is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

355.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).  Mercedes participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

356.     In the course of their business, Mercedes failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective HVAC System installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

357.     Mercedes also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective HVAC System installed in them.

358.     Mercedes has known knew of the HVAC System Defect prior to the sale/lease of the Class Vehicles, and likely as early as 2008, through sources such as those identified in paragraph 126 *supra*. Mercedes failed to disclose and actively concealed facts such as that the HVAC Systems installed in Class Vehicles would fail and/or malfunction as described herein, and denied and/or misled as to the tendency of the Class Vehicles to develop noxious foul odors

and cause of and remedy of the noxious foul odor caused by the Defective HVAC Systems installed in them.

359.    By failing to disclose and by actively concealing the HVAC System Defect in the Class Vehicles and/or the Defective HVAC System installed in them, by marketing them as more fully detailed above, *see* paragraphs 160-173 *supra*, Mercedes engaged in unfair or deceptive business practices in violation of the FDUTPA. Mercedes deliberately withheld the information about the propensity of HVAC Systems to grow mold, require frequent flushes, and emit noxious odors, in order to ensure that consumers would purchase the Class Vehicles, in order to ensure that consumers would purchase the Class Vehicles.

360.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed the HVAC System Defects discussed above. Mercedes compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective HVAC Systems installed in them were not defective, were not prone to mold growth and forming noxious odors, did not have odors, charging for "fixes" which were in fact temporary band-aids, denying and/or deflecting claims for fixes, and/or that filter changes were all that were needed to maintain the HVAC System and by claiming to be reputable manufacturers that value quality, reliability and comfort.

361.    Mercedes' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true quality, reliability and comfort of Class Vehicles and/or the Defective HVAC Systems installed in them, the quality of Mercedes' brands, and the true value of the Class Vehicles.

362.    Mercedes intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective HVAC Systems installed in them with an intent to mislead Plaintiffs and Class Members.

363.    Mercedes knew or should have known that its conduct violated the FDUTPA.

364.    As alleged above, Mercedes made material statements about the quality, reliability and comfort of the Class Vehicles and/or the Defective HVAC Systems installed in them that were either false or misleading.  Mercedes' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "state-of-the-art" and "the best or nothing," despite its knowledge of the HVAC System Defect or their failure to reasonably investigate it.

365.    To protect its profits and to avoid remediation costs and public relations problems, Mercedes concealed the dangers and risks posed by the Class Vehicles and/or the Defective HVAC Systems installed in them and their symptoms and consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving defective smelly vehicles.

366.    Mercedes owed Plaintiffs a duty to disclose the true safety, performance and reliability of the Class Vehicles and/or the Defective HVAC Systems installed in them because Mercedes:

> a.    Possessed exclusive knowledge of the HVAC System Defect;

> b.    Intentionally concealed the foregoing from Plaintiffs; and/or

> c.    Made incomplete representations about the safety, performance and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

367.    Because Mercedes fraudulently concealed the HVAC Defect in Class Vehicles, resulting in negative publicity once the HVAC Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In addition, the presence of noxious malodor requiring cleanings/treatments in the Class Vehicles makes them less valuable and attractive to potential purchasers in the used market, thereby further diminishing Class Vehicles' value.  In light of the stigma attached to Class Vehicles by Mercedes' conduct, the odors and frequent flushes needed by Class Vehicles, they are now worth significantly less than they otherwise would be.

368.    Mercedes' failure to disclose and active concealment of the problems posed by the Defective HVAC System in Class Vehicles were material to Plaintiffs and Class Members. A vehicle made by a reputable manufacturer of safe, non-foul smelling vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of noxious odor emanating vehicles that conceals defects rather than promptly remedies them.

369.    Plaintiffs and Class Members suffered ascertainable loss caused by Mercedes' misrepresentations and its failure to disclose material information.  Had they been aware of the HVAC System Defect that existed in the Class Vehicles, and Mercedes' complete disregard for safety, performance and comfort, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of Mercedes' misconduct.

370.    Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous in that Mercedes often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them.  Mercedes frequently blamed Plaintiffs and Class Members for causing the noxious foul odors complained of.  And Mercedes

often charged for repairs which it knew or should have known to be temporary fixes that did not remedy the defect.

371.    Plaintiffs and Class Members risk irreparable injury as a result of Mercedes' acts and omissions in violation of the FDUTPA, and these violations present a continuing risk to Plaintiffs, Class Members, as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

372.    As a direct and proximate result of Mercedes' violations of the FDUTPA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

373.    Plaintiffs and Class Members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

374.    Plaintiffs also seek an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

## TWELFTH CAUSE OF ACTION
### Fraudulent Concealment

375.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

376.    Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

377.    Mercedes concealed and suppressed, material facts concerning the quality of the Class Vehicles and the HVAC Systems in the Class Vehicles.

378.    Mercedes concealed and suppressed material facts concerning the serious Defect causing Class Vehicles to emit strong foul odors. Upon information and belief, the Defect lies in the evaporator and evaporator box deep within the dashboards of the Class Vehicles. Mercedes

knew that Plaintiffs and Class Members would not be able to inspect or otherwise detect the Defect prior to purchasing or leasing the Vehicles. Mercedes furthered relied upon this lack of disclosure to promote payments for temporary "fixes" and in some cases accused Plaintiffs and Class Members of causing the problem themselves – all the while concealing the true nature of cause and Defect from Plaintiffs and Class Members. Mercedes further denied the very existence the Defect and the propensity of foul odors when Plaintiffs and Class Members complained of the Defect.

379.    Mercedes concealed and suppressed material facts that point to the nature of the Defect being a faulty evaporator design, a $400 to $800 or more part requiring extensive labor and parts to replace and instead pushed temporary "fixes" like filter changes and cleanings.

380.    Mercedes did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Mercedes vehicles that the Class Vehicles were world-class, comfortable, warranted, and reliable vehicles and concealed the information in order to prevent harm to Mercedes and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Vehicles prior to their purchase or lease. These false representations and omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the representations and omissions played a significant role in their decisions to purchase or lease the Class Vehicles.

381.    Mercedes had a duty to disclose the HVAC System Defect in the Class Vehicles because it was known and/or accessible only to Mercedes; Mercedes had superior knowledge and access to the facts; and Mercedes knew the facts were not known to, or reasonably discoverable, by Plaintiffs and Class Members. Mercedes also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects

in the Class Vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, comfort, and usability. Even when faced with complaints regarding the Defect, Mercedes misled and concealed the true cause of the symptoms complained of. As a result, Class Members were misled as to the true condition of the Class Vehicles once at the time of purchase or lease and again when the Defect was complained of to Mercedes. The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased/leased, are material concerns to a consumer.

382.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, avoid recalls that would hurt the brand's image and cost money, and it did so at the expense of Plaintiffs and Class Members.

383.    On information and belief, Mercedes has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class Members and conceal material information regarding defects that exist in Mercedes vehicles.

384.    Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased cars designed and manufactured by Mercedes or chosen different models not known to emit foul odors. Plaintiffs and Class Members' actions were justified. Mercedes was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

385.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class Members sustained damages because they negotiated and paid value for the Class Vehicles not considerate of the HVAC System Defect that Mercedes failed to disclose, and they paid for temporary repairs and parts to attempt to remedy the Defect. Had they been aware of the concealed Defect that existed in the Class Vehicles, Plaintiffs and Class Members would have paid less for their Vehicles or would not have purchased or leased them at all.

386.    Accordingly, Mercedes is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

387.    Mercedes' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs and Class Members' rights and well-being to enrich Mercedes. Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### THIRTEENTH CAUSE OF ACTION
### Unjust Enrichment

388.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

389.    Mercedes has been unjustly enriched by Plaintiffs and Class Members purchasing/leasing Class Vehicles from Mercedes and purchasing replacement parts and services from Mercedes that Plaintiffs and Class Members would not have purchased/leased but for Mercedes's misconduct alleged above with respect to the HVAC System Defect.

390.    Plaintiffs and Class Members unknowingly conferred a benefit on Mercedes of which Mercedes had knowledge, since Mercedes was aware of the defective nature of the Class Vehicles' HVAC Systems and the resultant moldy odor problems, but failed to disclose this

knowledge and misled Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

391.    The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Mercedes to retain the benefit of profits that it unfairly obtained from Plaintiffs and Class Members. These profits include the premium price Plaintiffs and the Class paid for the Class Vehicles and the cost of the parts and services bought from Mercedes to temporarily alleviate the moldy odor emitted by the HVAC System.

392.    Plaintiffs and Class Members, having been damaged by Mercedes's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Mercedes to their detriment.

## **RELIEF REQUESTED**

393.    Plaintiffs, on behalf of themselves, and all others similarly situated, request the Court to enter judgment against Mercedes, as follows:

a.    an order certifying the proposed Class, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

b.    a declaration that the HVAC Systems in the Class Vehicles are defective;

c.    a declaration that Mercedes is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

d.    an order enjoining Mercedes to reassess all prior warranty claims related to smells in vehicle cabins;

e.    an ordering enjoining Mercedes, upon a Class Member's request, to pay the cost of inspection to determine whether the Defect is manifest, with any coverage disputes adjudicated by a special master.

f.      an order enjoining Mercedes from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and to permanently repair the Class Vehicles so that they no longer possess the HVAC System Defect;

g.      an award to Plaintiffs and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

h.      a declaration that Mercedes must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

i.      an award of attorneys' fees and costs, as allowed by law;

j.      an award of pre-judgment and post-judgment interest, as provided by law;

k.      leave to amend this Complaint to conform to the evidence produced at trial; and

l.      such other relief as may be appropriate under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

394.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: December 12, 2018          Respectfully submitted,

By:_____

Jonathan D. Selbin (*pro hac vice* forthcoming)
jselbin@lchb.com
Annika K. Martin (*pro hac vice* forthcoming)
akmartin@lchb.com
Jason L. Lichtman (NJ State Bar No. 8092011)
jlichtman@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:    212.355.9500
Facsimile:    212.355.9592

John T. Spragens (*pro hac vice* forthcoming)
jspragens@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
222 2nd Ave S, Suite 1640
Nashville, TN 37201
Telephone:    (615) 313-9000
Facsimile:    (615) 313-9965

Ketan A. Patel (*pro hac vice* forthcoming)
kp@personalinjury-ga.com
CORPUS LAW PATEL, LLC
PO Box 1022
Atlanta, Georgia 30290
Telephone:    (678) 597-8020
Facsimile:    (678) 826-4700

Brandon J. Hill (*pro hac vice* forthcoming)
WENZEL FENTON CABASSA, P.A.
1110 N Florida Ave, Ste 300
Tampa, FL 33602
Telephone:    813-579-2483
Facsimile:    813-229-8712

*Attorneys for Plaintiffs and the proposed Class*